[No. C005657. Third Dist. July 30, 1990.]

TANYA McALEXANDER, Plaintiff and Appellant, v.
SISKIYOU JOINT COMMUNITY COLLEGE et al., Defendants and
Respondents.

COUNSEL

T. James Fisher for Plaintiff and Appellant.

Moss & Enochian, Larry B. Moss and Keith Reyen for Defendants and Respondents.

OPINION

**DeCRISTOFORO, J.**—Plaintiff, Tanya McAlexander, appeals from a judgment granting defendant Siskiyou Joint Community College's (the College) motion for summary judgment. Plaintiff, a student in an emergency medical technician (EMT) training class offered by the College, filed suit after suffering injuries during a belay rope training exercise. On appeal, plaintiff contends triable issues of fact exist as to: whether Health and Safety Code section 1799.100 provides the College with immunity from suits brought by students; whether the rope belay was within the scope of EMT training; the instructor's qualifications; and whether Health and Safety Code section 1799.100 violates due process. We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, in an effort to obtain EMT certification, enrolled in "Health 15-A," an EMT training course offered by the College.

The College's EMT training program operated with the approval of the approving agency, Northern California Emergency Medical Services, Inc. The College's EMT-1A program director approved the assignment of Bill Balfrey as a course consultant to teach the rope belay technique as a part of the extrication and rescue portion of Health 15-A. The discretion to teach the rope belay technique as part of the extrication and rescue portion of EMT training was left up to the College by Northern California Emergency Medical Services, which also encouraged the use of consultants.

On the day of the accident, plaintiff and other class members met on a cliff near a rest stop on Interstate 5. The day's curriculum consisted of automobile extrication, the tearing and ripping apart of cars to extricate accident victims, and rope techniques including rope belay.

Belay is a technique in which one individual who is going down a hill ties one end of the rope around himself, while the other end is tied around a person at the top of the slope. The person at the top of the slope stabilizes the person going downhill by offering friction against the rope.

The belay instructor, Balfrey, advised the students that participation in the belay exercise was not required. However, according to plaintiff, Balfrey conveyed the impression he expected everyone to participate. Everyone present that day participated; this was the only time this phase of the course would be offered.

Plaintiff performed the belay exercise, acting as the anchor or belayer at the top of the cliff. While standing with her right leg slightly forward, plaintiff felt a sudden, violent jerk of the belay rope as the other student was lowered down the cliff. The rope caused a great deal of torque and downward force, causing plaintiff to twist to the left while being dragged to the ground. This incident caused injury to plaintiff's right knee, resulting in several surgeries and knee damage.

Plaintiff brought an action for personal injury, contending the instructor's negligence caused her injury. The College filed a motion for summary judgment contending that plaintiff's cause of action was barred by immunity granted to EMT training programs under Health and Safety Code section 1799.100. Following a hearing, the court granted the motion. Judgment was entered and plaintiff filed a timely notice of appeal.

## I. *Standard of Review*

"Since a summary judgment motion raises only questions of law regarding the construction and effect of the supporting and opposing papers, we independently review them on appeal, applying the same three-step analysis required of the trial court. First, we identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief on any theory reasonably contemplated by the opponent's pleading. [¶] Secondly, we determine whether the moving party's showing has established facts which negate the opponent's claim and justify a judgment in movant's favor. The motion must stand self-sufficient and cannot succeed because the opposition is weak. A party cannot succeed without disproving even those claims on which the opponent would have the burden of proof at trial. [¶] When a summary judgment motion prima facie justifies a judgment, the third and final step is to determine whether the opposition demonstrates the existence of a triable, material factual issue. Counter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue." (*AARTS Productions, Inc.* v. *Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203], citations omitted.)

" 'The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of

summary judgment should be resolved against granting the motion.'" (*Mann* v. *Cracchiolo* (1985) 38 Cal.3d 18, 35-36 [210 Cal.Rptr. 762, 694 P.2d 1134]; citations omitted.) Although the affidavits and declarations of the nonmoving party are liberally construed, even if they contain conclusory terms, the party opposing the motion must submit competent evidence in opposition showing sufficient facts to substantiate its allegations. (*Cory* v. *Villa Properties* (1986) 180 Cal.App.3d 592, 601 [225 Cal.Rptr. 628].)

When conflicts appear in the papers submitted in support of and in opposition to the motion, we resolve those conflicts in favor of the nonmoving party. (*Gregorian* v. *National Convenience Stores, Inc.* (1985) 174 Cal.App.3d 944, 946 [220 Cal.Rptr. 302].) In addition, all reasonable inferences are considered in favor of the nonmoving party. (*Rubio* v. *Swiridoff* (1985) 165 Cal.App.3d 400, 403 [211 Cal.Rptr. 338].)

■ The summary judgment procedure is designed to test whether any material triable issues of fact exist, but not to resolve disputed factual issues. (*Fireman's Fund Ins. Co.* v. *Fibreboard Corp.* (1986) 182 Cal.App.3d 462, 465 [227 Cal.Rptr. 203].) ■ An order of summary judgment will not be reversed in the absence of a clear showing of abuse of discretion. (*Fireman's Fund, supra*, 182 Cal.App.3d at p. 466.)

## II. *Scope of Immunity Under Health and Safety Code Section 1799.100*

The statute at the core of this dispute, Health and Safety Code section 1799.100, states: "In order to encourage local agencies and other organizations to train people in emergency medical services, no local agency, entity of state or local government, or other public or private organization which sponsors, authorizes, supports, finances, or supervises the training of people, or certifies those people, excluding physicians and surgeons, registered nurses, and licensed vocational nurses, as defined, in emergency medical services, shall be liable for *any civil damages* alleged to result from those training programs." (Italics added; all further statutory references are to the Health and Safety Code unless otherwise specified.)

■ Plaintiff contends a question of fact exists as to whether the immunity granted by section 1799.100 applies to the claims of students injured in an EMT training class. Plaintiff points out that several other Health and Safety Code statutes, which also pertain to limitations of liability and EMT personnel and services, only provide for immunity from third party liability. Therefore, according to plaintiff's reasoning, the Legislature must have intended section 1799.100 to provide immunity only from third party liability.

We disagree. Section 1799.100 is not susceptible to a construction limiting its application to only third party claimants. As Code of Civil Procedure section 1858 states: "In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; and where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all." Section 1799.100 is clear and unambiguous on its face, and to attempt to read a limitation of immunity into the statute would be to overstep the bounds of our authority.

As this court stated in *Hennigen* v. *United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 7-8 [125 Cal.Rptr. 408]: "We may not disregard or enlarge the plain provisions of the statute, nor may we go beyond the meaning of the words used when they are clear and unambiguous. . . . [¶] It is a prime rule of construction that the legislative intent underlying a statute must be ascertained from its language; if the language is clear, there can be no room for interpretation, and effect must be given to its plain meaning. An intent that finds no expression in the words of the statute cannot be found to exist. The courts may not speculate that the legislature meant something other than what it said. Nor may they rewrite a statute to make it express an intention not expressed therein. The court in *People* ex. rel. *Thain* v. *City of Palo Alto* (1969) 273 Cal.App.2d 400, 406 [78 Cal.Rptr. 240] stated: 'It will be assumed that the Legislature, in enacting a statute, has in mind existing related laws, including . . . the acts of previous Legislatures.' " (Citations omitted.)

Plaintiff fails to point out any ambiguity in the language of section 1799.100. Therefore, we cannot "read into" the statute plaintiff's proposed third party limitation.

■ Moreover, plaintiff's contention regarding a statutory scheme of providing immunity only for third party liability in the EMT statutes is not convincing. Plaintiff points to sections 1799.102, 1799.104, 1799.106, 1799.107, 1799.108, and 1799.110 as evidence of this statutory scheme.[1]

---

[1] Section 1799.102 states: "No person who in good faith, and not for compensation, renders emergency care at the scene of an emergency shall be liable for any civil damages resulting from any act or omission. The scene of an emergency shall not include emergency departments and other places where medical care is offered."

Section 1799.104 states: "(a) No physician or nurse, who in good faith gives emergency instructions to an EMT-II or mobile intensive care paramedic at the scene of an emergency, shall be liable for any civil damages as a result of issuing the instructions. [¶] (b) No EMT-II

Sections 1799.102, 1799.104, 1799.106, and 1799.108 all limit the immunity to liability for acts at "the scene of an emergency." The statute in question, section 1799.100, does not include the phrase "at the scene of an emergency." "Where a statute on a particular subject omits a particular provision, the inclusion of such a provision in another statute concerning a related matter indicates an intent that the provision is not applicable to the statute from which it was omitted." (*Marsh* v. *Edwards Theatres Circuit, Inc.* (1976) 64 Cal.App.3d 881, 891 [134 Cal.Rptr. 844], citations omitted.) In the present case, we find the omission of language limiting immunity to liability for acts at the scene of an emergency in section 1799.100 clearly reflects the Legislature's intention not to limit immunity to third party actions.

As the College ably points out, a review of the EMT related statutes cited by plaintiff fails to reveal a single, unified legislative purpose with regard to immunity. Section 1799.102 grants a broad immunity and basically codifies

---

or mobile intensive care paramedic rendering care within the scope of his duties who, in good faith and in a nonnegligent manner, follows the instructions of a physician or nurse shall be liable for any civil damages as a result of following such instructions."

Section 1799.106 states: "In addition to the provisions of Section 1799.104 of this code and of section 1714.2 of the Civil Code and in order to encourage the provision of emergency medical services by firefighters, police officers or other law enforcement officers, EMT-I, EMT-II, or EMT-P, a firefighter, police officer or other law enforcement officer, EMT-I, EMT-II, or EMT-P who renders emergency medical services at the scene of an emergency shall only be liable in civil damages for acts or omissions performed in a grossly negligent manner or acts or omissions not performed in good faith. A public agency employing such a firefighter, police officer or other law enforcement officer, EMT-I, EMT-II, or EMT-P shall not be liable for civil damages if the firefighter, police officer or other law enforcement officer, EMT-I, EMT-II, or EMT-P is not liable."

Section 1799.107, in pertinent part states: "(a) The Legislature finds and declares that a threat to the public health and safety exists whenever there is a need for emergency services and that public entities and emergency rescue personnel should be encouraged to provide emergency services. To that end, a qualified immunity from liability shall be provided for public entities and emergency rescue personnel providing emergency services. [¶] (b) Except as provided in Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code, neither a public entity nor emergency rescue personnel shall be liable for any injury caused by an action taken by the emergency rescue personnel acting within the scope of their employment to provide emergency services, unless the action taken was performed in bad faith or in a grossly negligent manner."

Section 1799.108 states: "Any person who has a certificate issued pursuant to this division from a certifying agency to provide prehospital emergency field care treatment at the scene of an emergency, as defined in Section 1799.102, shall be liable for civil damages only for acts or omissions performed in a grossly negligent manner or acts or omissions not performed in good faith."

Section 1799.110 states, in pertinent part: "(a) In any action for damages involving a claim of negligence against a physician and surgeon arising out of emergency medical services provided in a general acute care hospital emergency department, the trier of fact shall consider, together with all other relevant matters, the circumstances constituting the emergency, as defined herein, and the degree of care and skill ordinarily exercised by reputable members of the physician and surgeon's profession in the same or similar locality, in like cases, and under similar emergency circumstances."

the "good samaritan" rule. Section 1799.104 is much narrower than sections 1799.100 or 1799.102, and provides an immunity for physicians and nurses giving emergency instruction to EMT personnel and paramedics at the scene of an emergency. Sections 1799.106 and 1799.108 extend immunity for emergency care by firefighters, police, EMT personnel and others. Section 1799.107 provides immunity for public entities and personnel engaged in emergency rescue operations. In each of the foregoing sections immunity is qualified by a requirement that immunity shall not apply if the acts are not performed in good faith, or are performed in a grossly negligent manner. Section 1799.110 does not provide immunity, instead it limits the type of evidence admissible in an action against physicians providing emergency medical care. This patchwork of statutes does not reflect a single unified concept of third party immunity.

We conclude section 1799.100 is unambiguous in its grant of complete immunity: "no local agency . . . which sponsors, authorizes, supports, finances or supervises the training of people [in emergency medical services] . . . shall be liable for *any* civil damages alleged to result from those training programs." (Italics added.) This grant of immunity comports with the Legislature's stated intent. As section 1797.5 states: "It is the intent of the Legislature to promote the development, accessibility, and provision of emergency medical service to the people and State of California. [¶] Further, it is the policy of the State of California that people shall be encouraged and trained to assist others at the scene of a medical emergency. Local government, agencies, and other organizations shall be encouraged to offer training in cardiopulmonary resuscitation and lifesaving first aid techniques so that people may be adequately trained, prepared, and encouraged to assist others immediately."

III. *Rope Belay and the Scope of EMT Training*

■ Plaintiff argues a question of fact exists as to whether the rope belay class was part of an approved course curriculum, and argues the administrative regulations governing EMT programs specifically prohibit course content which exceeds the statutory curriculum.

Title 22 of the California Code of Regulations section 100063 defines the scope of practice of an Emergency Medical Technician I (EMT-I). Title 22, California Code of Regulations section 100063 subdivision (a) (9) states an EMT-I shall "[p]erform extrication and disentanglement from entrapment." Title 22, California Code of Regulations section 100075 sets forth the required course content for an EMT-I training program. Section 100075, subdivision (n) requires students to be trained in the following skills:

"MODULE XIV: EXTRICATION AND RESCUE

"(1)  Phases of the rescue

"(2)  Lifting and moving patients

"(3)  Extrication, and rescue techniques

"(A)  Single vehicle entry using pry bar, spring loaded center punch, short board and collar

"(B)  Other extrication tools . . .

"(6)  Management skills, including:

"(A)  Moving and lifting patients

"(B)  Extrication techniques

"(C)  Proficiency with tools."

Plaintiff contends that because the module does not *explicitly* discuss the use of rope belay techniques, the course was beyond the scope of courses allowed, citing title 22, California Code of Regulations section 100075, subdivision (p), "The course content shall not include skills which exceed the scope of practice defined in this Chapter."

The College argues teaching rope belay techniques is appropriate for extrication and rescue training in mountainous Siskiyou County. In support of this proposition, the College filed a declaration by the chief executive officer for Northern California Emergency Medical Services, Inc., stating the teaching of rope belay was within the permissible scope of EMT-IA training, and would not result in the loss of approval of the College's training program. However, plaintiff contends this skill is unnecessary in counties without hills or mountains, and, plaintiff argues, the Legislature intended EMT programs to be *uniform.*

Plaintiff's uniformity argument is undermined by the language of section 1797.170 which states: "EMT-I: Standards for training and scope of practice for EMT-I personnel; . . . [¶] (a) The authority shall establish *minimum* standards and promulgate regulations for the training and scope of practice for EMT-I." (Italics added.) Moreover, in the Legislative Digest the comments concerning the Emergency Medical Services System and Prehospital Emergency Medical Care Personnel Act note: "This bill would establish permanent, statewide guidelines for EMT training. Counties

would continue to have *considerable flexibility* in developing their own programs." (Italics added.) Plaintiff's contention that training programs were to be absolutely uniform directly contradicts the language of section 1797.170 and the Legislative Digest commentary.

While EMT medical training will be similar from county to county, the types of rescue situations facing an EMT will vary according to the terrain of each area. Under the California Code of Regulations guidelines, training programs will maintain the minimum training standards, but will also retain the flexibility to train EMT students to meet the geographic challenges they will encounter in their respective environments. We find no triable issue of fact regarding the inclusion of rope belay in the EMT curriculum.

## IV. *Instructor's Qualifications*

Plaintiff argues a question of fact exists regarding the qualifications of the rope belay instructor, William Balfrey. Plaintiff contends if rope belay was to be offered as part of the EMT course, Balfrey should have been approved as an instructor, and his teaching method should have been "verified." Plaintiff also claims Balfrey is referred to in the College's moving papers as a "consultant" and argues whether Balfrey was a "teaching assistant" is a question of fact.

Title 22, California Code of Regulations section 100070, subdivision (d) describes EMT training personnel: "Each training program may have teaching assistant(s) who shall be individual(s) qualified by training and experience to assist with teaching of the course and shall be approved by the program director in coordination with the program clinical coordinator as qualified in teaching the topics to which the assistant is to be assigned. A teaching assistant shall be supervised by a principal instructor, the program director and/or the program clinical coordinator."

The College states Balfrey is referred to in the record as a "volunteer instructor," a "consultant," and "an assistant," and points out that he was approved to assist in the teaching of the EMT class by the College's EMT program director. Moreover, the College presented evidence that Balfrey's expertise as a mountaineer was well known by both the EMT program director and the instructor of Health 15-A. The College also presented evidence that the use of consultants with special expertise was a common practice encouraged by the approving body, Northern California Emergency Medical Services, Inc.

We agree with the College's statement that: "To impose liability because an individual with special expertise such as Mr. BALFREY was used as a

consultant would circumvent the legislative intent in providing the immunity granted under section 1799.100." The Legislature sought to encourage EMT programs to cover the broad course curriculum provided for in Title 22, California Code of Regulations section 10075 including physiology, anatomy, obstetric and gynecologic emergencies, shock reactions, and extrication and rescue. To ensure EMT programs the ability to provide this curriculum, Title 22, California Code of Regulations section 100070, subdivision (d) outlines the role of teaching assistants. We find plaintiff has presented no question of fact regarding Balfrey's status or qualifications. Balfrey assisted in teaching Health-1A, his expertise was known to the College, and he was approved by the program director.

## V.  *Due Process*

■  Finally, plaintiff questions the constitutionality of section 1799.100. Plaintiff argues that immunity under section 1799.100 would not apply to students who did not intend to become EMT's. Therefore, according to plaintiff, applying section 1799.100 immunity to students who *did* intend to become EMT's raises questions of due process.

We need not address plaintiff's constitutional claim because its factual premise is unfounded. There is nothing in the language of section 1799.100 which eliminates the immunity if the student in the program does not intend to become an EMT. Immunity under section 1799.100 covers a public entity that "supervises the training of people [in emergency medical services] or certifies those people." The statute makes no distinction between a trainee who intends to become an EMT and one who does not. Therefore, we reject plaintiff's due process contention.

### DISPOSITION

The judgment is affirmed. The respondent is awarded costs on appeal.

Sims, Acting P. J., and Marler, J., concurred.