[Nos. F017613, F017750. Fifth Dist. Nov. 2, 1993.]

PAMELA DUCKETT et al., Plaintiffs and Appellants, v.
PISTORESI AMBULANCE SERVICE, INC., et al., Defendants,
Cross-defendants and Respondents;
LEADER INDUSTRIES, INC., Defendant, Cross-complainant and
Appellant.

**[Opinion certified for partial publication.\*]**

---

\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for
publication with the exception of parts I, III and IV.

**COUNSEL**

Linn Law Offices, Linn, Lindley & Blate, Gary T. Blate, Sandell & Young, Roberta J. Duffy and William Young for Plaintiffs and Appellants and for Defendant, Cross-complainant and Appellant.

Emerson and Yrulegui and Carol S. Corey for Defendants, Cross-defendants and Respondents.

Chinello, Chinello, Shelton & Auchard, Paul Auchard and Michael S. Frye as Amici Curiae on behalf of Defendants, Cross-defendants and Respondents.

**OPINION**

**HARRIS, J.**—Appellants Pamela and Michael Duckett and Leader Industries, Inc., appeal from the grant of summary judgment in favor of Pistoresi Ambulance Service, Inc., and James Sherrell on all causes of action alleged against them. The summary judgment affects the Ducketts' complaint and the cross-complaint filed by Leader Industries against Pistoresi Ambulance Service and James Sherrell for contribution and indemnity.

In the unpublished portion of this opinion we will conclude that the court did not err in its grant of summary judgment as to the "products liability" cause of action. In the published portion we will conclude that the court correctly granted summary judgment as to the causes of action based upon motor vehicle negligence. Accordingly, we will affirm the judgment.

### STATEMENT OF THE CASE

On December 20, 1990, appellants/plaintiffs Pamela Duckett (Duckett) and Michael Duckett (jointly Ducketts) filed a complaint for motor vehicle negligence, loss of consortium, and products liability against respondents/defendants Pistoresi Ambulance Service, Inc. (Pistoresi) and James Sherrell (Sherrell), appellants/defendants/cross-complainants Leader Industries, Inc., (Leader) and defendants General Motors Company (GMC), John Wesley Jackson, Jeff Nichols, and Cassandra Jones.[1] All named defendants filed answers denying the allegations and asserting affirmative defenses. Pistoresi and Sherrell filed answers asserting the affirmative defense of statutory

---

[1] Disposition of the loss of consortium cause of action is completely dependent on the conclusions reached on the application of the statutory immunity, as will be discussed below, to the motor vehicle negligence cause of action.

immunity pursuant to Health and Safety Code section 1799.100.[2] Pistoresi, Leader, and GMC separately filed cross-complaints against the other defendants for contribution and indemnity. Yosemite Union High School filed a complaint in intervention. Pistoresi amended its cross-complaint to include the Fresno County Office of Education, Yosemite Union High School, and Kings River Community College as defendants. The parties subsequently stipulated that the correct identity of the intervener was the Fresno County Office of Education.

On January 23, 1992, Pistoresi and Sherrell filed a motion for summary judgment or summary adjudication of issues. On February 10, 1992, the Ducketts and Leader filed opposition to the motion. On February 20, 1992, Pistoresi and Sherrell filed a response to the opposition.

On February 25, 1992, a hearing was held on the summary judgment motion. On March 2, 1992, the court granted the motion as to Pistoresi and Sherrell. Ducketts and Leader appeal.

## FACTS

Duckett was enrolled in an Emergency Medical Technician (EMT) IA certification program offered by Kings River Community College (KRCC). The program was held at KRCC's satellite campus, Yosemite Union High School, which is located in the Madera Unified School District. The EMT-IA certification program requires that a student have eight hours of supervised instruction on an operational ambulance. An agreement existed between the Madera Unified School District and Pistoresi to permit students to obtain the ambulance portion of the EMT training from Pistoresi.

On December 21, 1989, Duckett was in an ambulance owned by Pistoresi as part of her required training for the EMT-IA certification. The ambulance was driven by Sherrell, an EMT-I and employee of Pistoresi, in the course and scope of his employment at Pistoresi. Sherrell was not giving any instructions or training to Duckett, but merely driving the ambulance. Duckett was under the supervision of Brian Ladd, a paramedic and Pistoresi employee. Ladd and Duckett were both in the patient compartment of the ambulance. The ambulance was on a nonemergency run transporting a patient from Madera Convalescent Hospital to her doctor in Fresno.

The ambulance was crossing the intersection of 9th and C Streets in Madera when it was struck from the left by a northbound vehicle traveling on C Street. The intersection of 9th and C Streets is a four-way stop. Sherrell

---

[2]All statutory references are to the Health and Safety Code unless otherwise indicated.

stopped at the corner and looked left, right, and left again. His visibility was 200 to 300 feet. When he looked left the second time he did not see any vehicles approaching the intersection at C Street. He then started through the intersection. As the ambulance proceeded through the intersection, it was hit by a stolen car driven by John Wesley Jackson that was traveling at a high rate of speed down C Street. The stolen car collided with the left rear side of the ambulance and spun the ambulance around at least one 360-degree turn. Duckett was ejected from the rear of the ambulance and sustained serious injuries. Neither Sherrell nor Ladd could remember what Duckett was doing just prior to the impact. Jackson attempted to leave the scene on foot, but he was apprehended by passersby and later charged with driving under the influence of alcohol, fleeing the scene of an accident, and reckless driving.

Pistoresi purchases vans to use as ambulances in providing emergency medical services, and it is not in the business of selling ambulances or any other vehicles. The ambulance involved in the accident was originally a Chevrolet van manufactured by GMC. Pistoresi ordered the ambulance from Leader. Leader converts vans into ambulances. Pistoresi ordered a standard ambulance conversion from Leader. After the ambulance was converted by Leader, Pistoresi made no changes, modifications, or alterations to it prior to the accident.

The Ducketts filed the instant complaint against Pistoresi, the owner of the ambulance, and Sherrell, Pistoresi's employee and the driver of the ambulance; GMC, which manufactured the van; Leader, which converted the van into an ambulance; John Jackson, the driver of the stolen car; and Jeff Nichols and Cassandra Jones, the owners of the stolen car. The first cause of action was against all defendants for motor vehicle negligence arising out of the crash. The second cause of action was generally for "products liability": "strict liability" was alleged against GMC and Leader as manufacturers; "negligence" was alleged against Leader, GMC, and Pistoresi; and "breach of warranty" was alleged against Leader and GMC. The third cause of action was filed by Michael Duckett against all defendants for loss of consortium based on his wife's injuries.

Pistoresi and Sherrell filed answers denying the allegations and raising several affirmative defenses, including the statutory immunity of section 1799.100 based on Pistoresi's status as a provider of EMT training.

Pistoresi filed a cross-complaint for indemnity against the other defendants. Leader filed a cross-complaint for partial contribution and indemnity against Pistoresi and the other defendants. GMC similarly filed a cross-complaint for complete and partial indemnity against Pistoresi, Leader, and the other defendants.

On January 23, 1992, Pistoresi and Sherrell filed a motion for summary judgment or, in the alternative, summary adjudication. The motion asserted that Pistoresi and Sherrell had a complete defense to the motor vehicle negligence cause of action under section 1799.100, which grants immunity from any civil damages resulting from emergency training programs. The motion argued that Duckett was in the ambulance to fulfill the state-mandated requirements for EMT certification, and her injuries occurred during such training. The motion also sought summary judgment on the "products liability" cause of action. Pistoresi and Sherrell specifically limited their argument to the contention that as to this cause of action there were no disputed material facts and did not rely on statutory immunity. The motion argued that Pistoresi was not a manufacturer, designer, supplier, or other party with a duty in a products context. It purchased the van after it was converted into the ambulance and could not be liable under any products liability theory. The summary judgment motion was supported by a statement of undisputed facts regarding the circumstances of Duckett's training and the accident itself.

On February 10, 1992, the Ducketts filed opposition to the summary judgment motion. While they did not dispute that Duckett was in the ambulance as part of her EMT training, they argued that her injuries did not result from such training but from the ambulance driver's negligence. The Ducketts conceded that there were no disputed material facts regarding the immunity issue, but argued that section 1799.100 only granted immunity to training entities, and that such immunity did not extend to an employee. Since Duckett was not being trained to drive the ambulance, the injuries did not result from her EMT training and the immunity did not apply.

As for the products liability cause of action, the Ducketts argued that there was a dispute as to whether the ambulance was modified after the accident. Pistoresi's claim that it was not a manufacturer of the ambulance was irrelevant to the issue of whether Pistoresi was negligent in allowing the ambulance to be used.

The Ducketts' opposition was supported by their separate statement of undisputed facts. The majority of Pistoresi's facts were deemed undisputed except for two: the Ducketts disputed the dates that Pistoresi purchased the ambulance and ordered its conversion. While the Ducketts conceded that Pistoresi did not modify the ambulance prior to the accident, they disputed whether Pistoresi modified the ambulance *after* the accident. The Ducketts submitted their own facts regarding Sherrell's alleged negligence and two facts regarding the design of the ambulance rear door handle: that the padded handle opened the door by pushing down, and the handle possibly protruded.

The summary judgment motion was also opposed by Leader. Leader argued that a triable issue of fact existed as to whether Duckett was injured as a result of the training program or the negligent operation of the ambulance by Sherrell. Leader similarly argued that Duckett was not being trained to drive the ambulance, and the legislative immunity applies only when a trainee's injuries result from the training program. Neither Sherrell nor Ladd could remember what Duckett was doing at the time of the accident, and a triable issue of fact existed as to whether Duckett was engaged in any portion of EMT training at the time of the accident. Leader argued that section 1799.100 did not extend to a person such as Sherrell who was not engaged in training functions. Leader did not address the products liability cause of action.

Leader's opposition was supported by a reply to Pistoresi's statement of undisputed facts. Leader did not dispute the general facts surrounding the circumstances of the accident, but disputed whether Duckett was engaged in EMT training at the time of the impact because Ladd had no memory of the incident. Leader also disputed whether the agreement between Pistoresi and the school district defined "training representative." Leader's separate statement of undisputed facts addressed whether Sherrell was engaged in training Duckett at the time of the accident, and whether driving an ambulance was part of the EMT certification requirements.

On February 20, 1992, Pistoresi and Sherrell filed a response to the opposition. They argued that Duckett's injuries resulted while Sherrell was acting in the course and scope of his duties as an ambulance driver and while Duckett was receiving training as a student trainee in the patient compartment. The motion attached the course requirements for the EMT certification program which included the requirement of supervised instruction on an operational ambulance either during an emergency or an interfacility transfer to obtain EMT certification. Sherrell was part of the crew providing such training to Duckett, her injuries occurred during the training, and section 1799.100 extended to both Pistoresi and its employee.

As for the "products liability" issue, Pistoresi noted that it did not dispute the two facts regarding the padded handle. "There are no facts that link PISTORESI with this design or manufacture. There is simply no ' cause of action for negligent products liability because there are no material issues of triable facts." The Ducketts offered "no evidence that would support a negligent products liability theory against PISTORESI. PISTORESI is a consumer of the product and cannot be held in on any theory under products liability."

On February 25, 1992, a hearing was held on the summary judgment motion. Pistoresi argued that any dispute as to Sherrell's alleged negligence

was irrelevant because the immunity of section 1799.100 applied regardless of any negligence. Pistoresi cited the statutory regulations defining the requirements for EMT training, which included operational ambulance procedures. Duckett was engaged in such training, and Sherrell was part of the ambulance team. The immunity applied both to Pistoresi and Sherrell as providers of EMT training. As for the products liability issue, Pistoresi argued that it was merely a consumer of the converted ambulance and was not liable for any defects.

The Ducketts argued that the statutory immunity only applied to injuries resulting from actual training, and Sherrell was not involved in any part of the EMT training. The immunity did not apply to a nonemergency run. "As far as the product liability is concerned, [the motion] conveniently escapes the argument of whether Pistoresi knew or had knowledge of a defect. If they did, there is a valid action for product liability . . . stated against them, . . . ."

Leader argued that the statutory requirements for EMT training did not include driving or being in the rear of an ambulance. Leader insisted that disputed material facts existed as to Sherrell's negligence and whether his conduct fell within section 1799.100.

On March 2, 1992, the court filed its order finding no triable issue of fact involving Pistoresi and Sherrell and that they were entitled to summary judgment pursuant to the immunity afforded under section 1799.100. The court ordered costs to Pistoresi and Sherrell.

Both the Ducketts (F017613) and Leader (F017750) appeal the court's grant of summary judgment. The Ducketts argue that (1) the immunity of section 1799.100 does not apply because Sherrell was not involved in the EMT training, and (2) the products liability cause of action should have survived the summary judgment on the theory that Pistoresi had a duty to warn Duckett of the defective door handle if they knew about it.

Leader again argues that Sherrell was not involved in the EMT training, and ambulance driving was not part of the mandatory course curriculum. Leader concludes that section 1799.100 does not protect Pistoresi and Sherrell because Duckett's injuries were not related to the EMT training. Leader contends that material facts are still in dispute based on their contention that Duckett's injuries did not result from the EMT training.

DISCUSSION

I.

JUDICIAL NOTICE*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.

STATUTORY IMMUNITY

The court properly granted summary judgment based on statutory immunity.

Summary judgment is proper if the supporting papers are sufficient to sustain a judgment in favor of the moving party as a matter of law and the opposing party presents no evidence giving rise to a triable issue as to any material fact. (Code Civ. Proc., § 437c, subd. (c).) To prevail on a summary judgment motion, the defendant must conclusively negate a necessary element of the plaintiff's case or establish a complete defense. (*Horsemen's Benevolent & Protective Assn.* v. *Insurance Co. of North America* (1990) 222 Cal.App.3d 816, 820 [271 Cal.Rptr. 838].) ▮ Where the evidence presented by defendant does not support judgment in his favor, the motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff. (*Albertini* v. *Schaefer* (1979) 97 Cal.App.3d 822, 831 [159 Cal.Rptr. 98].) The evidence of the moving party is strictly construed and that of the opposing party liberally construed. (*Coppola* v. *Superior Court* (1989) 211 Cal.App.3d 848, 862 [259 Cal.Rptr. 811].) Where there is no material issue of fact to be tried and the sole question before the court is one of law, it is the duty of the trial court on a motion for summary judgment to hear and determine the issue of law. (*Rombalski* v. *City of Laguna Beach* (1989) 213 Cal.App.3d 842, 848 [261 Cal.Rptr. 820].)

In reviewing a grant of summary judgment, an appellate court must make its own independent determination of the construction and effect of the papers submitted. Review of the trial court's determination involves pure matters of law and requires reassessment of the legal significance of the documents. The reviewing court applies the same three-step analysis as that of the trial court: (1) identification of issues framed by the pleadings; (2) determination of whether the moving party has established facts which negate the opponent's claim and justify a judgment in movant's favor; and

*See footnote, *ante*, page 1525.

(3) determination of whether the opponent demonstrates the existence of a triable, material factual issue. (*Saldana* v. *Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1513-1515 [285 Cal.Rptr. 385]; *Preis* v. *American Indemnity Co.* (1990) 220 Cal.App.3d 752, 757 [269 Cal.Rptr. 617].)

■ The central issue in this case is whether Pistoresi and Sherrell are protected by section 1799.100 from any civil liability arising from the accident. Section 1799.100 states: "In order to encourage local agencies and other organizations to train people in emergency medical services, no local agency, entity of state or local government, or other public or private organization which sponsors, authorizes, supports, finances, or supervises the training of people, or certifies those people, excluding physicians and surgeons, registered nurses, and licensed vocational nurses, as defined, in emergency medical services, shall be liable for any civil damages alleged to result from those training programs." This section is part of chapter 9, division 2.5 of the Health and Safety Code limiting liability for various emergency situations, including persons rendering emergency care at the scene of an emergency (§ 1799.102); physicians or nurses giving emergency instructions to mobile emergency units (§ 1799.104); firefighters (§ 1799.106) and emergency rescue personnel (§ 1799.107); and physicians and surgeons in hospital emergency departments (§ 1799.110). Pistoresi and Sherrell claim immunity from liability in the instant case as a private organization which sponsors, supports and supervises the training of EMT personnel pursuant to section 1799.100.

*McAlexander* v. *Siskiyou Joint Community College* (1990) 222 Cal.App.3d 768 [272 Cal.Rptr. 70] is the only published case interpreting section 1799.100. There, plaintiff was enrolled in defendant college's EMT certification program. The college hired a consultant to teach the rope belay technique. This technique was not part of the express statutory requirements for EMT certification, but imposed pursuant to the discretion of the college as part of the extrication and rescue module of EMT training. While plaintiff acted as the anchor at the top of the cliff, she felt a sudden, violent jerk of the belay rope as the other student was lowered down the cliff, and she suffered knee damage. Plaintiff brought an action for personal injury contending the instructor's negligence caused her injury. (222 Cal.App.3d at pp. 772-773.) The opinion fails to state whether she sued both the instructor and the college. The college filed a motion for summary judgment arguing that the suit was barred by the immunity granted to EMT training programs under section 1799.100, and the motion was granted.

On appeal, McAlexander argued that a question of fact existed as to whether the immunity of section 1799.100 applied to the claims of students

injured in an EMT training class since other Health and Safety Code sections only grant immunity from third party liability. *McAlexander* rejected this argument and held that section 1799.100 is not limited to third party claimants. Section 1799.100 is "clear and unambiguous on its face," and the court refused to read plaintiff's proposed third party limitation into the statute. (222 Cal.App.3d at p. 775.) In addition, the other immunity statutes enacted as part of chapter 9, division 2.5, expressly limit immunity to liability for acts at the scene of an emergency. Section 1799.100 does not contain such limiting language which, the court held, "clearly reflects the Legislature's intention not to limit immunity to third party actions." (222 Cal.App.3d at p. 776.) "This patchwork of statutes does not reflect a single unified concept of third party immunity." (*Id.* at p. 777.) The court concluded that section 1799.100 is unambiguous in its grant of complete immunity given the Legislature's stated intent in section 1797.5 to promote the development, accessibility, and provision of emergency medical services in the state. (222 Cal.App.3d at p. 777.)

*McAlexander* rejected plaintiff's argument that a question of fact existed as to whether the rope belay class was part of the approved course curriculum to bring it within the statutory immunity. The court reviewed the sections within title 22 of the California Code of Regulations defining the scope of practice of an EMT, which includes extrication and rescue techniques. While the regulations did not list rope belay as an express requirement, the counties are granted "considerable flexibility" in developing their own EMT training programs. (222 Cal.App.3d at pp. 777-779.)

*McAlexander* also rejected plaintiff's argument that a question of fact existed regarding the qualifications and classification of the rope belay instructor, Balfrey. The college argued that Balfrey was approved to assist in the teaching of the EMT class by the college's EMT program director, his expertise as a mountaineer was well known by the program director and class instructor, and the certifying agency approved of the use of consultants with special expertise. (222 Cal.App.3d at p. 779.) The court agreed that to impose liability because an individual with special expertise as Balfrey was used as a consultant would circumvent the legislative intent in providing immunity under section 1799.100. "The Legislature sought to encourage EMT programs to cover the broad course curriculum provided for in [the regulations]" which permit the use of teaching assistants to provide such curriculum. (222 Cal.App.3d at p. 780.)

Finally, *McAlexander* rejected plaintiff's attack on the constitutionality of section 1799.100. Plaintiff argued that the immunity only applied if the students intended to become EMT's, and a due process problem existed if

the immunity was applied to students who did not intend to become EMT's. "There is nothing in the language of section 1799.100 which eliminates the immunity if the student in the program does not intend to become an EMT. Immunity under section 1799.100 covers a public entity that 'supervises the training of people [in emergency medical services] or certifies those people.' The statute makes no distinction between a trainee who intends to become an EMT and one who does not." (222 Cal.App.3d at p. 780.)

In the instant case, the Ducketts and Leader argue that Duckett was not injured in the course of the EMT-IA training, and Pistoresi and Sherrell are parties to which the legislative immunity does not apply. A review of the statutory requirements for EMT training and certification, however, places the instant situation within section 1799.100's grant of immunity. The Health and Safety Code established the Emergency Medical Services Authority and vested it with the duty to establish minimum standards and promulgate regulations for the training and scope of practice for EMT's (EMT-I & EMT-II) and paramedics (EMT-P). (§§ 1797.54, 1797.107, 1797.109, 1797.170, 1797.208.) An EMT-I-A is an individual trained in all facets of basic life support according to standards prescribed by statute and who has a valid certificate issued pursuant to statute and regulations. (§ 1797.80.)

Title 22, division 9, chapter 2 of the California Code of Regulations contains the aforementioned regulations. The purpose of an EMT training program is "to prepare individuals to render prehospital basic life support at the scene of an emergency, during transport of the sick and injured, or during interfacility transfer within an organized EMS system." (§ 100065, subd. (a).) EMT training and certification can only be offered by approved programs which meet regulation requirements. (§§ 100057, 100058, 100065.)

An EMT-I is a person who successfully completes a basic EMT-I course which meets the requirements of title 22 of the California Code of Regulations passes all required tests, and certified as either an EMT-IA (ambulance) or EMT-I-NA (nonambulance) by the EMT-I certifying authority. (§ 100060.) An EMT-IA must complete the ambulance attendant module as provided in chapter 2. (§ 100060, subd. (a).) An approved EMT-I training program shall consist of the EMT-I basic course, the ambulance and/or nonambulance module, and specified examinations. (§ 100073.) The basic EMT-I course shall consist of not less than 80 hours of classroom and laboratory instruction. (§ 100074, subd. (a).)

"(b) The ambulance module for EMT-IA training shall consist of not less than eight (8) hours of instruction in ambulance operations and procedures,

eight (8) hours of supervised clinical experience in a hospital(s), and *eight (8) hours of supervised instruction on an operational ambulance. . . .*" (Cal. Code Regs., tit. 22, § 100074, subd. (b), italics added.) An EMT-IA is certified statewide in the basic scope of practice as defined in section 100063 of title 22 of California Code of Regulations (§ 100060, subd. (a)). "During training, while at the scene of an emergency, and during transport of the sick or injured, or during interfacility transfer a supervised EMT-I trainee or certified EMT-I is authorized to do any of the following. . . ," including evaluating and transporting the ill and injured, rendering basic life support, obtaining diagnostic signs, performing cardiopulmonary resuscitation, and other functions as specified in the regulations. (§ 100063, subd. (a).)

In the instant case, it is undisputed that Duckett was being trained as an EMT-IA, which requires training in the ambulance attendant module. Title 22 of the California Code of Regulations requires that the ambulance attendant module include eight hours "of supervised instruction on an operational ambulance." (Cal. Code Regs., tit. 22, § 100074, subd. (b).) The training program prepares the EMT-IA for dealing with emergencies, transportation of the sick or injured, or interfacility transfers. (§§ 100063, 100065.) It is also undisputed that Duckett was in the patient compartment of the Pistoresi ambulance as a trainee under the supervision of paramedic Brian Ladd as part of her EMT training, and that the ambulance team was engaged in the nonemergency transportation of an elderly patient from a rest home to a doctor's office. Such an excursion obviously falls within the "supervised instruction on an operational ambulance" and interfacility patient transfer required of an EMT-IA trainee. The failure of both Ladd and Sherrell to remember exactly what Duckett was doing at the time of impact does not negate the fact that Duckett was engaged in EMT training. We conclude that Duckett was injured while fulfilling the statutory and regulatory requirements to obtain EMT-IA certification. Thus, under the specific facts of this case, respondents are protected by the statutory immunity of section 1799.100.

The Ducketts and Leader argue that the immunity of section 1799.100 does not shield Pistoresi and Sherrell from liability because Pistoresi is not an entity providing EMT training as contemplated by section 1799.100. The Ducketts and Leader argue that the protected entities would be program providers, such as Madera Unified School District or KRCC, because they are the actual sponsoring, supervising, and certifying organizations. The Ducketts and Leader point out that *McAlexander* merely extended the immunity to the defendant college which provided the program, thus preventing the extension of such immunity to a private ambulance company such as Pistoresi or their employee Sherrell. This argument is based on a strained

interpretation of section 1799.100. The statute grants immunity to local agencies, entities of state or local government, *and* "other public or private organization which sponsors, authorizes, supports, finances, or supervises the training of people, or certifies those people, . . ." (§ 1799.100.) It is undisputed that Pistoresi is a private ambulance company which has an agreement with the Madera Unified School District permitting EMT trainees to earn the required hours for the ambulance module on the Pistoresi ambulances. The EMT trainee must complete eight hours on an operational ambulance to earn his or her certification. Thus, Pistoresi qualifies as a private organization which sponsors, supports and supervises EMT trainees.

The Ducketts and Leader insist that Duckett's injuries did not result from the actual EMT training, but from Sherrell's negligence in driving the ambulance. They distinguish *McAlexander* as involving an injury incurred during the actual training activity of rope belaying. In contrast, they argue that Duckett was not receiving any type of training or supervision from driver Sherrell when the accident occurred. Instead, Duckett's injuries were the result of Sherrell's negligence and were completely unrelated to any type of EMT training. Leader argues that a triable issue of fact thus exists as to Sherrell's negligence. The regulations establish strict requirements for EMT training and certification. An EMT-IA must complete eight hours of supervised instruction on an operational ambulance. An ambulance cannot be operational without a driver. Duckett's presence in an operational, moving ambulance during an interfacility patient transfer falls within the EMT training requirements. The fact that Sherrell was not specifically supervising her, or that she was not receiving instruction on ambulance driving, does not eliminate the undisputed reality that she was on board an operational ambulance to fulfill the training and certification requirements for an EMT-IA, that her injuries occurred in the course and scope of such a training procedure and, under the facts of this case, the legislative immunity extends to parties such as Pistoresi and its employee Sherrell to encourage them to continue to provide opportunities for EMT training.

The Ducketts and Leader urge this court to find an exception to the application of immunity based on *City of Sacramento* v. *Superior Court* (1982) 131 Cal.App.3d 395 [182 Cal.Rptr. 443] and *Duarte* v. *City of San Jose* (1980) 100 Cal.App.3d 648 [161 Cal.Rptr. 140]. Both cases refused to apply statutory immunity to public entities based on the express language of immunity statutes. In contrast, section 1799.100 represents an absolute grant of immunity given the circumstances of emergency medical training.

Leader takes a different tack in disputing the extension of immunity to Pistoresi and Sherrell. It argues that section 1799.100 only applies when the

EMT is injured during actual emergency medical training. It characterizes *McAlexander* as involving a trainee who was injured during training in *emergency* medical procedures, and argues that Duckett was merely involved in a nonemergency patient transfer. Thus, the statutory immunity cannot shield respondents from liability because Duckett was not injured during training in emergency medical procedures.

Such an interpretation of section 1799.100 is refuted by the regulatory scheme establishing EMT training requirements. Section 1799.100 bars liability for any civil damages resulting from training programs in "emergency medical services." The EMT-IA program falls within the emergency medical services program contemplated and authorized by statute. The EMT-IA training program includes both emergency and nonemergency situations, such as transportation of the sick or injured and interfacility patient transfers. The classification of such programs as providing for "emergency medical services" does not limit immunity from liability to situations arising from actual emergencies. The fact that Duckett was injured during a nonemergency ambulance run does not negate the fact that she was present in the ambulance as part of the ambulance module requirements for certification as an EMT-IA.

Leader additionally contends that triable issues of fact exist as to whether Duckett's injuries resulted from EMT training. "[I]t cannot be determined as a matter of law that transportation is part of the training course thereby permitting PISTORESI and its driver to be immune from all liability, including negligent driving." These issues do not present triable issues of material fact, but instead require interpretation of the statutory and regulatory scheme to determine if this type of EMT training indeed falls within the statutory immunity. It is undisputed that Duckett was not being instructed in ambulance driving, but instead was in the patient compartment as a trainee. It is also undisputed that the accident occurred while the ambulance was engaged in a nonemergency interfacility patient transfer. These undisputed facts set up the legal questions discussed above as to whether such activities fall within emergency medical training services and the statutory immunity. Any disputed factual questions as to Sherrell's negligence are irrelevant since section 1799.100 expressly prevents any civil liability arising from such negligence.

The superior court properly granted respondents' motion for summary judgment given the absence of any triable issues of material fact and the existence, under the circumstances of this case, of the complete defense to the motor vehicle negligence causes of action pursuant to section 1799.100. (*Stratton* v. *First National Life Ins. Co.* (1989) 210 Cal.App.3d 1071, 1083 [258 Cal.Rptr. 721].)

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Best, P. J., and Bianchi, J.,† concurred.

A petition for a rehearing was denied November 23, 1993, and appellants' petitions for review by the Supreme Court were denied February 12, 1994. Mosk, J., was of the opinion that the petitions should be granted.

---

*See footnote, *ante*, page 1525.

†Retired judge of the Kern Superior Court sitting under assignment by the Chairperson of the Judicial Council.