Filed 5/19/15  Haney v. Eskaton Properties CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# **COPY**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DENNIS HANEY, | C070827 |
| Plaintiff and Appellant, | (Super. Ct. No. 34200800005159CUPOGDS) |
| v. | |
| ESKATON PROPERTIES, INC., | |
| Defendant and Respondent. | |

Following the death of his mother Doris Hilton, plaintiff Dennis Haney filed this action against defendant Eskaton Properties, Inc., operator of a long-term care facility where Hilton lived for a few months before she passed away in a hospital.  Plaintiff alleges elder abuse (Welf. & Inst. Code, § 15657) and a "survival action" for him to recover as Hilton's successor in interest.  (Unless otherwise stated, statutory references that follow are to the Welfare and Institutions Code.)  In an earlier appeal -- *Haney v.*

1

*Eskaton Properties, Inc.*, nonpublished opinion filed March 28, 2011, C063376 (*Haney I*) -- we held the trial court erred in sustaining a demurrer. In this appeal, plaintiff challenges summary judgment entered in favor of defendant. Plaintiff argues (1) the trial court erred in considering Eskaton business records without proper authentication, and (2) defendant's motion failed to negate allegations of reckless neglect supporting damages for statutory elder abuse. We affirm the judgment.

FACTS AND PROCEEDINGS

In reviewing summary judgment, we view the evidence in the light most favorable to the plaintiff. (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107.) Most of the evidence comes from defendant's copious business records.

Plaintiff's elderly mother was admitted to Eskaton Care Center Fair Oaks for long term care on August 11, 2006. She lived there until she died at Kaiser Permanente hospital on November 28, 2006.

When Hilton entered defendant's facility, she was alert and verbally responsive. She had a pressure ulcer on her buttock and a skin tear on her lower leg. She had a history of chronic obstructive pulmonary disorder, hypothyroidism, type II diabetes, depression, anxiety, dementia, and coronary artery disease.

The pressure ulcer and skin tear eventually healed. Meanwhile, on August 22, 2006, Hilton became incontinent of urine and stool. Eskaton records reflect she was kept clean and dry. A physician's assistant (P.A.) Dan Hunter, visited Hilton on September 19th and noted no signs of infection. On October 4, 2006, Dr. Roy Berry visited Hilton. She had no complaints. Dr. Berry visited again on October 18, and there were no complaints or changes. On October 27th, P.A. Hunter again visited Hilton and ordered a urinalysis, which revealed a urinary tract infection (UTI). Antibiotics were prescribed on October 29th. On October 30th, P.A. Hunter again saw Hilton, reviewed laboratory studies, and noted they were unremarkable. The nurse's notes show Hilton

2

refused to take her "meds" on November 5th. On November 6th, P.A. Hunter visited Hilton and ordered that the antibiotics be discontinued. Hilton was voiding adequate amounts of urine without difficulty and was up and about in her wheelchair. A note dated November 7th said no adverse effects were present.

There is no indication that the doctor or physician's assistant were part of Eskaton staff, and this appeal does not involve any claim of medical malpractice against the doctor or physician's assistant.

Defendant's Interdisciplinary Team met for a regular quarterly review on November 22, 2006. Progress notes indicated Hilton had no complaints and was attending activities in her wheelchair daily. Plaintiff testified in deposition that at the team meeting, his mother was brought into the room at his request, and she was slumped over in her wheelchair. Plaintiff requested another doctor visit and urine test.

On November 24th, P.A. Hunter visited Hilton and ordered a urinalysis. Defendant's staff called the lab that day, to pick up the urine specimen the next morning.

On November 26th, Hilton began to have increased episodes of diarrhea and vomiting. She was moaning and became non-verbal. Eskaton staff contacted Hilton's doctor and plaintiff, and had Hilton taken to the Kaiser Roseville emergency room (ER) the same day. At the ER, Dr. John Mitchell noted a urinary tract infection, acidosis (pH imbalance) and acute renal failure. His assessment was of urosepsis with septic shock, profound acidosis and acute renal failure secondary to hyperkalemia. In deposition, Dr. Mitchell testified a bladder infection was the direct or indirect cause of these issues.

Hilton was admitted to the hospital with a poor prognosis and passed away two days later, on November 28, 2006. In deposition, Dr. Mitchell testified he could not determine how long Hilton had been critically ill before arriving at the ER, because he had not reviewed the skilled facility records.

On September 17, 2008, plaintiff filed his second amended complaint asserting claims for (1) elder abuse, though not so labeled, (2) wrongful death, and (3) a survival

3

action for plaintiff to recover as Hilton's successor in interest. The complaint alleged defendant breached its duties to Hilton by intentionally failing to (a) follow physician's orders to give Hilton antibiotics for a kidney infection, (b) monitor her condition, (c) note and properly react to emergent conditions and timely transfer Hilton to an acute care facility, (d) maintain accurate records, and (e) treat Hilton with respect, e.g., failing to safeguard her dentures and failing to assist her in eating or provide proper nutrition when her dentures were misplaced. The complaint alleged that, as a result of defendant's outrageous conduct and deliberate indifference, Hilton suffered personal injury, severe emotional distress, humiliation, and death. She was "neglected and without care or attention, without assistance in feeding or toileting, and was left without medication for a diagnosed urinary infection until she became confused and incoherent. During this time, her cries of pain and for assistance prompted no response from defendants [Eskaton and Doe defendants], who had allocated knowingly inadequate resources to provide proper staffing to care for Doris Hilton. Accordingly, defendants were unwilling and/or unable to react to Doris Hilton's complaints or follow orders for therapeutic action from her attending physician so that her condition worsened until her death on November 28, 2006."

In the prior appeal, *Haney I*, we held the trial court erred in sustaining defendant's demurrer to the elder abuse and related survival claims. (*Haney I, supra*, slip opn. pp. 3-4.) But we affirmed the trial court's grant of summary adjudication in favor of defendant on the wrongful death claim, because it was based on professional negligence barred by the statute of limitations. (*Id*. at p. 23.) In the current appeal, both sides ask that we take judicial notice of the clerk's transcript in the prior appeal. We see no need to do so but note a copy of our nonpublished opinion in *Haney I* is included in the clerk's transcript in this appeal.

Upon remand after *Haney I*, defendant moved for summary judgment on the grounds that defendant treated Hilton properly and plaintiff could not establish the

4

elements of reckless neglect or causation for elder abuse or for the survival action, which depended on the elder abuse claim. Defendant submitted its own business records, Kaiser Permanente's medical records, and a declaration from Dr. Bennett Zier, expert in geriatric medicine, who reviewed the records. After reciting the substance of the records, Dr. Zier opined defendant's staff "acted appropriately and within the applicable standard of care at all times . . . [and] did not recklessly neglect or abuse [Hilton] at any time."

Dr. Zier attested: "The duties of Eskaton staff are to observe and assess a resident, report any significant changes in a resident's condition, and follow physician and P.A. [physician assistant] orders. During the decedent's admission, Eskaton staff regularly assessed [her] with proper frequency, called the attending physician when appropriate, and followed the orders given by Dr. Berry and P.A. Hunter. Also, on November 26th, the decedent was moaning, non-verbal, and noted to have increased episodes of diarrhea and emesis. At this time, a nurse provided decedent with oxygen and called the decedent's responsible party and Dr. Roy Berry within a reasonable time, who then ordered the decedent's transfer to the acute care setting. Eskaton staff's level of assessing and observing decedent was performed well within the standard of care throughout decedent's admission at Eskaton and during the November 26th transfer. Furthermore, Eskaton staff's assessing and observing decedent during the admission and the November 26th transfer was not reckless neglect or abuse in any way. Eskaton staff also provided the decedent with custodial, non-medical care well above a level that could be considered reckless neglect or abuse in any way." Dr. Zier also stated his opinion "that no act or omission by Eskaton staff caused the decedent's demise. Based upon the medical chronology, as well as my knowledge and experience, there is no evidence which would demonstrate any causal connection between any action or inaction on the part of Eskaton's staff and the decedent's death. Furthermore, decedent had multiple co-morbidities, including chronic obstructive pulmonary disorder, hypothyroidism, type II diabetes, depression, anxiety, dementia, and coronary artery disease, none of which

5

occurred as a result of any act or omission by Eskaton staff.  As such, it is my opinion that the decedent's decline and eventual death were precipitated by conditions unrelated to the care provided by Eskaton, and not unexpected in an individual of the decedent's physiologic reserve.  In other words, the care and treatment provided to the decedent by Eskaton staff, to a reasonable degree of medical probability (greater than 50%), did not cause or in any way contribute to the [d]ecedent's death.  Nor was it a substantial factor in causing decedent any harm."

The motion noted the survival claim was dependent on the elder abuse claim, and defeat of the elder abuse claim left plaintiff with no viable cause of action.

Plaintiff opposed summary judgment.  He made evidentiary objection to Eskaton's business records on various grounds (hearsay and lack of personal knowledge and foundation).  Plaintiff complained the declaration of the custodian of records failed to comply with Code of Civil Procedure section 2015.5, which requires that the declaration state either that it was signed *in California* or that it was subject to *California* perjury laws.  The custodian's original declaration, dated March 23, 2009, simply attested, "I am an authorized employee/custodian of medical records for ESKATON CARE CENTER FAIR OAKS.  I certify that the copies of the medical records for the above named patient were copied and sent to [Eskaton's lawyer] on or about March 29, 2008, and were true copies of the original[s] through that date.  I further certify that the records were prepared by the personnel of the hospital, staff, physicians, or persons acting under the control of either, in the ordinary course of hospital business at or near the time of the act, condition or event.  [¶]  *I declare under penalty of perjury that the foregoing is true and correct*." (Italics added.)  The custodian's name was not typewritten, and the signature is difficult to decipher.

Plaintiff argued the court could not consider Dr. Zier's opinion because it was based on unauthenticated business records.

Plaintiff also opposed summary judgment on the ground Dr. Zier applied the standard of care for medical malpractice, which was not the appropriate standard for an elder abuse claim. Rather, elder abuse may be founded on violation of regulations applicable to skilled nursing facilities, e.g., prompt notification to the attending licensed healthcare practitioner of any sudden adverse change in a patient's symptoms or behavior. (Cal. Code Regs., tit. 22, § 72311.) Plaintiff asserted as undisputed fact that Eskaton staff told the Kaiser ER staff that Hilton had not been responsive to voices and had had a tactile fever (i.e., being warm to the touch) for a couple of days before being sent to the ER. However, the cited evidence from Kaiser's records merely indicated Hilton was brought in "with altered mental status. The patient may have had tactile fever [i.e., being warm to the touch] as well at the facility but apparently per staff the patient has had diminishing level of consciousness for a couple of days now and has not been responsive to voice in her usual fashion." The attending ER physician, Dr. Mitchell, testified in deposition that that annotation "may have been from either [Hilton's] son or it may have been from -- from the ER staff. Sometimes this information is sort of passed on from say the skilled facility staff to the emergency personnel, then to the ER staff and then to us, and so it becomes sort of a story that gets handed down." Plaintiff offered no evidence as to the source. However, the trial court overruled defendant's hearsay objection to the evidence.

With its reply papers, defendant submitted a new declaration from the custodian of records, Eric Santiago, attesting "I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct . . . . [¶] Dated this 29 day of 2011, in Fair Oaks, California." The top of the declaration shows the date of December 28, 2011, and typewritten information "Eric Santiago [¶] Health Information Manager" and lists the address in Fair Oaks, California. The signature on both declarations appears to be the same, though the latter has an extra scribble at the end.

7

At the hearing in the trial court, plaintiff's counsel speculated the scribble must be initials of a different person who signed on behalf of Santiago (imitating Santiago's handwriting). The trial court did not accept plaintiff's speculation. Defense counsel argued he was familiar with Mr. Santiago's signature, and it was Mr. Santiago's signature on both declarations. Plaintiff's counsel argued that, because the declaration was defective on its face, plaintiff had no reason to go out and retain an expert to rebut the defense expert. When the court asked if there was any reason to believe the records were falsified, plaintiff's counsel said they were the records that had been produced in discovery, but "I have no reason to believe that they are what they are or aren't what they are. That's all I can tell you. I have no evidence one way or the other."

On January 18, 2012, the trial court issued its order overruling evidentiary objections and granting summary judgment in favor of defendant. The trial court ruled plaintiff's objection to the custodian's declaration lacked merit because (1) Santiago's initial declaration that he is custodian for Eskaton Fair Oaks, which is indisputably in California, substantially complied with Code of Civil Procedure section 2015.5, and (2) in an "abundance of caution" defendant submitted an additional declaration from Santiago stating it was executed in California *and* under the laws of the State of California. "The court sees no reason to doubt the authenticity of either that document or [the declaration of defense counsel]. Both of Santiago's declarations pass muster under CCP § 2015.5. [¶] Finally, in the absence of plaintiff's counsel's ability to articulate at oral argument any genuine dispute as to whether the documents are what they purport to be, the court sees no reason to doubt the authenticity of the records. . . ."

The court explained its reasons for granting summary judgment. As to defendant's argument that plaintiff's allegations did not constitute neglect because they spoke only to the improper undertaking of medical services, not the failure to provide medical care, the trial court stated, "This legal argument is improper. The Court of Appeal has already determined that plaintiff's allegations are sufficient to constitute

8

neglect. *Haney*, C063376, at [p.] 18 ('We conclude plaintiff should be given an opportunity to try and prove, by clear and convincing evidence, that Eskaton's conduct amounted to recklessness, oppression, fraud or malice.') The Court of Appeal's holding is law of the case."

The trial court then addressed defendant's assertion that plaintiff cannot establish neglect because defendant's care was proper. Defendant's expert, Dr. Zier, attested defendant's "staff acted appropriately and within the applicable standard of care at all times. Furthermore, . . . Eskaton staff did not recklessly neglect or abuse the decedent at any time." Zier opined defendant's staffing levels exceeded the standard of care because "(1) all physician orders were promptly followed by Eskaton staff, (2) Eskaton staff observed and assessed decedent regularly, and (3) all changes in decedent's condition [were] promptly reported." Relying on its expert's declaration, defendant asserted plaintiff could not establish that any act or omission by defendant caused or contributed to Hilton's injury. The trial court ruled defendant's showing sufficient to shift to plaintiff the burden of demonstrating the existence of a triable issue of material fact. Plaintiff had failed to demonstrate a triable issue. He presented no expert to dispute Dr. Zier's declaration, and the issues raised by the pleadings and the motion were beyond the ken of the average lay person.

The trial court granted summary adjudication in favor of defendant on the elder abuse claim, which defeated the survival cause of action which depended totally on the elder abuse claim. (*Sababin v. Superior Court* (2006) 144 Cal.App.4th 81, 88 (*Sababin*).) Having disposed of all claims, the trial court entered judgment in favor of defendant.

9

DISCUSSION

I

*Standard of Review*

A defendant moving for summary judgment must show either that an element of the cause of action cannot be established, or that there is a complete defense to the cause of action.  (Code Civ. Proc., § 437c, subd. (p)(2).)  If the defendant makes that showing, the burden shifts to the plaintiff to prove the existence of a triable issue of material fact as to that element or defense.  (Code Civ. Proc., § 437c, subds. (c), (p)(2).)  If the plaintiff is unable to do so, the defendant is entitled to judgment as a matter of law.  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 780-781.)  On appeal, our review is de novo.  (*Id*. at pp. 768, 780-781.)

II

*Authentication of Records*

Although our review on summary judgment is de novo, we review the trial court's rulings on evidentiary objections by applying an abuse of discretion standard.  (*Miranda v. Bomel Construction Co., Inc*. (2010) 187 Cal.App.4th 1326, 1335.)  Moreover, a trial court has "wide discretion in determining whether sufficient foundation is laid to qualify evidence as a business record."  (*People v. Beeler* (1995) 9 Cal.4th 953, 978; Evid. Code, § 1271 [business records admissible where custodian testifies to identity and mode of preparation]; Evid. Code, § 1561 [records shall be accompanied by custodian's affidavit that copies are true copies or that records were delivered to attorney for copying].)

Plaintiff contends the trial court abused its discretion by considering Eskaton's business records despite plaintiff's evidentiary objection that the declaration purporting to authenticate the records failed to comply with Code of Civil Procedure section 2015.5, which requires an unnotarized affidavit to "recite[] that it is certified or declared by [the

10

affiant] to be true under penalty of perjury, is subscribed by him or her, and (1), if executed within this state, states the date and place of execution, or (2), if executed at any place, within or without this state, states the date of execution and that it is so certified or declared under the laws of the State of California."

Plaintiff argues the original declaration was fatally defective, and the trial court was not allowed to consider the new declaration submitted with defendant's reply papers. We conclude plaintiff is wrong on the latter point, so we need not address the former. We also do not rely on defendant's argument that plaintiff forfeited the right to object to the custodian's declaration by failing to object when the business records were used in the prior motion that resulted in summary adjudication of the wrongful death claim.

Plaintiff's position -- that the trial court should never have looked past the defective moving papers -- relies on the rule that the party moving for summary judgment has the burden of production before the burden ever shifts to the opposing party, and when the moving party fails to meet its burden, the motion must be denied without even looking at the opposition papers or the reply papers. (Code Civ. Proc., § 437c, subd. (b); *Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 940 (*Hawkins*).)

Here, however, defendant did meet its burden of producing evidence. The problem of authentication would not necessarily have been apparent without reference to the opposition papers that presented the evidentiary objection.

This case does not present the due process concern apparent in *Hawkins*. There, a person who was shot outside an apartment complex sued the building owners. (*Id.* 144 Cal.App.4th at pp. 939, 941.) The plaintiff claimed the defendants were negligent in hiring the shooter as an apartment manager and security guard, in allowing him to remain as a tenant after notice of his dangerous propensities, and in allowing him to carry a gun despite knowing he was a felon with a drug problem and had threatened tenants. The defendants moved for summary judgment, arguing they had no duty to protect the plaintiff because the shooting happened outside the apartment complex and the plaintiff

11

was voluntarily associating with the shooter. (*Id*. at pp. 941-942.) The trial court granted summary judgment to the defendants on the ground the plaintiff's opposition papers failed to prove the shooter was an employee or tenant of the defendants. (*Id*. at p. 942.) We reversed, because the defendants' motion did not even purport to show that the plaintiff could not prove his respondeat superior theory. The moving papers did not address whether the shooter was a tenant or employee or exercised apparent authority over the premises, nor did the motion address defendants' knowledge of the shooter's dangerousness. We said that, because the motion did not negate theories of employer liability, the trial court should have "stopped there." The trial court erred in shifting the burden to the plaintiff. (*Id*. at p. 945.)

This case is nothing like *Hawkins*.

Rather, this case is more like cases holding that Code of Civil Procedure section 437c does not prohibit a trial court from considering a corrected declaration submitted with reply papers -- or even new substantive evidence -- where the opponent is not prejudiced. In *Wall Street Network, Ltd. v. New York Times Co*. (2008) 164 Cal.App.4th 1171, the moving papers included a declaration that omitted a statement of the witness's competency to testify to the matter, as required by the summary judgment statute. The opposition objected, and the reply papers submitted a new declaration stating the witness was competent to testify. (*Id*. at pp. 1182-1183.) The trial court allowed the amended declaration, reasoning the opponent was not prejudiced. (*Id*. at p. 1183.) The appellate court agreed, stating a trial court may properly consider new evidence submitted with a reply brief so long as the party opposing summary judgment has notice and an opportunity to respond to the new material. (*Ibid*.) The original declaration identified the substantive evidence upon which the moving parties sought summary judgment. The opponent objected to the amended declaration at the hearing on the summary judgment motion, but never identified any prejudice from its admission. Accordingly, the trial court did not err in admitting the new amended declaration. (*Id*. at pp. 1182-1183.)

12

*Baron v. Mare* (1975) 47 Cal.App.3d 304, held a declaration in support of summary judgment was defective for failure to comply with Code of Civil Procedure section 2015.5, but the appellate court nevertheless considered the substance of the declaration because the moving party "possibly may again move for summary judgment with an amended declaration formally sufficient." (*Id*. at p. 308 [substance of declaration was insufficient for summary judgment].)

Even new *substantive* evidence has been allowed in reply papers. In *Weiss v. Chevron, U.S.A., Inc*. (1988) 204 Cal.App.3d 1094 (*Weiss*), a plaintiff injured in a collision with a vehicle driven by a gas station employee sued the gasoline supplier. Chevron moved for summary judgment, asserting the plaintiff had no evidence of an agency relationship supporting vicarious liability. (*Id*. at pp. 1097, 1098.) The opposition pointed out it was the moving party's burden to disprove the theory. The reply papers submitted a new declaration and supporting documents addressing the issue, indicating these papers had been erroneously omitted from the moving papers. (*Ibid*.) The trial court continued the hearing months to allow the opponent to file further substantive opposition. The opponent did not counter the new evidence substantively but "chose instead to remain fast to a technical procedural objection," asserting the court could not consider any supporting papers not accompanying the original motion. (*Id*. at pp. 1098-1099.) The appellate court held the trial court properly considered the new declaration. Code of Civil Procedure section 437c "does not expressly or impliedly prohibit the inclusion of evidentiary matter with the reply. Moreover, subdivision (c) states that the motion 'shall be granted *if all the papers submitted* show that there is no triable issue. . . .,' and the court 'shall consider *all of the evidence set forth in the papers*' except that to which objections have been sustained. (Italics added.) This unqualified reference to 'the papers' before the court, without limitation to documents submitted with the original motion, also supports the reasonable inference that the court should consider all admissible evidence of which the opposing party has had notice and the opportunity to

13

respond. [Citation.]" (*Weiss, supra*, 204 Cal.App.3d at p. 1098.) The opposing party's attempt to "elevate form over substance is contrary to the intent that summary judgment should eliminate those causes of action about which the parties have no factual dispute." (*Id*. at p. 1099.)

*Plenger v. Alza Corp*. (1992) 11 Cal.App.4th 349, affirmed summary judgment where the trial court considered supplemental declarations submitted with the reply papers, stating the risk of death from untreated infection was a matter of general and elemental medical knowledge. (*Id*. at p. 362.) "Although the inclusion of additional evidentiary matter with the reply should only be allowed in the exceptional case, the trial court's consideration of such additional evidence is not an abuse of discretion so long as the party opposing the motion for summary judgment has notice and an opportunity to respond to the new material. [Citation.]" (*Id*. at p. 362, fn. 8 [opponent did not object or request continuance, did not claim additional evidence could be presented and did not claim on appeal that trial court erred in allowing the new declarations].)

Here, defendant did not submit new substantive evidence but merely corrected a technical defect in authentication of the business records. Plaintiff fails to show prejudice. The trial court did not err in considering the new declaration.

III

*No Triable Issue of Material Fact*

Plaintiff contends defendant's motion did not address the complaint's allegations of elder abuse.

Plaintiff does not have much of substance to say on appeal, bringing to mind the rule: "Although our review of a summary judgment is de novo, it is limited to issues which have been adequately raised and supported in plaintiff['s] brief. [Citations.] Issues not raised in an appellant's brief are deemed waived [forfeited] or abandoned. [Citation.]" (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn. 6.) We may disregard

14

contentions unsupported by reasoned argument and citation to authority. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

The Elder Abuse Act (§ 15600 et seq.) is intended "to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect." (*Delaney v. Baker* (1999) 20 Cal.4th 23, 33 (*Delaney*).) The Elder Abuse Act offers heightened remedies for damages but requires more than negligence; it requires proof by clear and convincing evidence of reckless, oppressive, fraudulent, or malicious conduct. (*Id*. at p. 31.)

The Act defines "abuse" as either "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering" or "deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." (§ 15610.07.) "Physical abuse" means assault, battery, prolonged deprivation of food or water, unreasonable physical restraint, or sexual assault. (§ 15610.63.) "Neglect" means "negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise," including failure to assist with personal hygiene or the provision of food, clothing, or shelter, failure to provide medical care, failure to protect from health hazards, and failure to prevent malnutrition. (§ 15610.57, subds. (a)-(b).)

"Where it is proven by clear and convincing evidence that a defendant is liable for neglect or physical abuse, and the plaintiff proves that the defendant acted with recklessness, oppression, fraud, or malice, a court shall award attorney fees and costs. Additionally, a decedent's survivors can recover damages for the decedent's pain and suffering." (*Sababin, supra*, 144 Cal.App.4th at p. 88, citing § 15657.) Recklessness refers to "a subjective state of culpability greater than simple negligence, which has been described as a 'deliberate disregard' of the 'high degree of probability' that an injury will occur." (*Delaney, supra*, 20 Cal.4th at p. 31 [conduct was reckless where nursing home

15

failed over an extended period of time to attend to resident's bedsores, despite knowledge of deteriorating condition and daughter's repeated efforts to intervene on mother's behalf].) Oppression, fraud and malice involve intentional, willful, or conscious wrongdoing of a despicable or injurious nature. (*Ibid*.)

The Elder Abuse Act does not apply to actions for professional negligence against health care providers, which are governed by other laws. (§ 15657.2; *Delaney, supra*, 20 Cal.4th at pp. 28-29, fn. 2.) Thus, while "[i]t is true that statutory elder abuse includes 'neglect as defined in Section 15610.57' [citation], which in turn includes negligent failure of an elder['s] custodian 'to provide medical care for [the elder's] physical and mental health needs' [citation]," such neglect "covers an area of misconduct distinct from 'professional negligence.' As used in the Act, neglect refers not to the substandard performance of medical services but, rather, to the 'failure of those responsible for attending to the basic needs and comforts of elderly or dependent adults, regardless of their professional standing, to carry out their custodial obligations.' [Citation.] Thus, the statutory definition of 'neglect' speaks not of the *undertaking* of medical services, but of the failure to *provide* medical care." (*Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 783.) In other words, while negligently providing health care is not covered by the Elder Abuse Act, doing so recklessly, oppressively, fraudulently or maliciously *is* covered by the Act.

On appeal, plaintiff says the trial court agreed that Dr. Zier's declaration established defendant acted with due care, but the trial court "[i]nexplicably" found "that [plaintiff] had failed to support his argument that an action under the elder abuse statute is a statutory one whose standard of care is set by the applicable statutes and regulations without citing any of the appropriate statutes or regulations [citation to record] and discussed the argument despite [plaintiff's] citation to the appropriate regulations and statutes in his Opposition [citation to record] and the facts to which they were applicable." Plaintiff's point is difficult to discern. The trial court indicated plaintiff

16

failed to identify any regulations ignored by Dr. Zier. On appeal, plaintiff does not identify any regulations not embraced in Dr. Zier's declaration. He cites regulations calling for the facility to monitor changes in the resident's condition, notify the attending licensed healthcare practitioner of sudden adverse changes, and maintain records. (Cal. Code Regs., tit. 22, §§ 72311, 72547.) Plaintiff insists there was evidence that defendant violated the regulations because, for example, defendant's records contained no notation of Hilton being nonresponsive before November 26th. Plaintiff does not show the expert or the trial court ignored any applicable regulations; plaintiff just disagrees with whether or not they were violated.

Plaintiff argues: "Looking solely at the central, factual issues raised in ESKATON's Motion for Summary Judgment, the following facts demonstrated [recklessness]:" (1) Hilton was admitted to Eskaton due to numerous long-term health conditions; (2) she developed a urinary tract infection and was started on a 10-day course of antibiotics on October 29, 2006; (3) the antibiotics were discontinued on November 6th; (4) she was slumped over in her wheelchair and (in her son's lay opinion) "obviously ill" at the interdisciplinary conference on November 22nd; (5) Eskaton agreed to perform another urinalysis at plaintiff's request; (6) the urinalysis was not performed until November 25th; (7) by November 25th, Hilton was moaning, nonresponsive to voices, and feverish; (8) by the time she was taken to the ER on November 26th, she had been nonresponsive and feverish for a couple of days; (9) this change in her condition was not documented in Eskaton's records; (10) the change was not brought to the doctor's attention until after plaintiff requested that Hilton be taken to the hospital; and (11) she died on November 28th due to urosepsis secondary to a urinary tract infection.

However, plaintiff misstates the record, fails to cite supporting evidence, and fails to show a triable issue of the recklessness required for an elder abuse claim. He cites pages of Eskaton and Kaiser records that do not support his assertions that Hilton was moaning, nonresponsive, and feverish for a couple of days before her November 26th

17

transfer to the ER. And he cites to his Response to Defendant's Separate Statement of Undisputed Facts, which is not itself evidence. " 'It is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations.' [Citations.] If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived [forfeited]. [Citation.]" (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856.)

Despite plaintiff's failings, we note Kaiser records did indicate Hilton may have been warm to the touch and "apparently per staff the patient has had diminishing level of consciousness for a couple of days now and has not been responsive to voice in her usual fashion." However, Hilton's condition raised no alarm when she was seen by the physician's assistant two days before she went to the ER. Plaintiff cites no evidence supporting his assertion that there was an adverse change in condition that was not brought to the doctor's attention until after plaintiff requested that Hilton be taken to the hospital. There is no evidence that plaintiff initiated the transfer to the ER. The cited record shows the change in condition (moaning, nonverbal) occurred on November 26th. Eskaton staff contacted plaintiff, "who gave okay to send [Hilton] to ER," and staff called for an ambulance. To the extent Hilton's condition may have changed after the P.A.'s visit, plaintiff presents nothing supporting an inference that Eskaton staff's conduct was reckless or malicious, as opposed to mere negligence which would not support an elder abuse claim. To the extent plaintiff complains the urine test was not conducted immediately after the November 22nd meeting, he fails to show how that creates a triable issue because, even assuming the delay was attributable to Eskaton staff rather than the doctor's schedule, Hilton's condition raised no alarm when the physician's assistant visited.

Additionally, plaintiff offered no evidence refuting Dr. Zier's conclusion that defendant did nothing reckless causing injury or death to Hilton. Causation is an

18

essential element of an elder abuse claim and must be proven by clear and convincing evidence. (*Carter v. Prime Healthcare Paradise Valley LLC* (2011) 198 Cal.App.4th 396, 407.)

Plaintiff suggests expert evidence was not needed, because this is not a professional negligence case. However, plaintiff presents no legal analysis on the use of experts in elder abuse cases, and we therefore need not consider the matter. (*Badie v. Bank of America, supra*, 67 Cal.App.4th at pp. 784-785.)

Plaintiff also argues the summary judgment motion did not address allegations of neglect in failing to provide nutrition and assistance with eating, and failing to maintain required staffing levels. However, the Eskaton records reviewed by Dr. Zier included detailed nutrition notes and progress notes, and Dr. Zier, having reviewed these records, concluded "Eskaton staff . . . provided the decedent with custodial, non-medical care well above a level that could be considered reckless neglect or abuse in any way." This satisfied defendant's burden of production in its summary judgment motion, shifting the burden to plaintiff to show evidence, not mere allegations, demonstrating a triable issue of fact. Plaintiff failed to do so.

Finally, we note that, unlike the trial court apparently, we do not base our decision on the thought that plaintiff was required to present expert medical testimony to counter Dr. Zeir's declaration. The necessity for expert witness evidence in elder abuse cases is an open question. But there is no law or precedent of which we are aware that precludes expert medical testimony in elder abuse cases. We do not make our decision here based even in part on the failure of plaintiff to present expert medical testimony. At the end of the day, Dr. Zeir's declaration stood solely for the proposition that defendant did not do anything or fail to do something that caused the decedent's demise. Plaintiff was unable to counter that evidence and, thus, summary judgment for the defendant was appropriate.

We conclude plaintiff fails to show grounds for reversal.

DISPOSITION

The judgment is affirmed.  Defendant shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


                                                        HULL         , J.


We concur:


RAYE         , P. J.


BUTZ         , J.