[No. C049462. Third Dist. Oct. 11, 2006.]

MICHAEL WILLIAM HAWKINS, Plaintiff and Appellant, v.
MARK WILTON et al., Defendants and Respondents.

COUNSEL

Jay-Allen Eisen, C. Athena Roussos; and Kenneth N. Meleyco for Plaintiff and Appellant.

LaFollette, Johnson, DeHaas, Fesler and Ames, Barry Vogel and John R. Haluck for Defendants and Respondents.

OPINION

**MORRISON, J.**—David Anthony Rodriguez shot Michael William Hawkins outside an apartment complex. We affirmed Rodriguez's convictions for attempted murder and related charges. (*People v. Rodriquez* (Dec. 21, 2005, C045870) [nonpub. opn.].)

In this case Hawkins sued the owners and managers of the apartment complex (collectively Wilton), alleging that Wilton was negligent in hiring Rodriguez as an apartment manager and security guard, and in allowing him to remain as a tenant after notice of his dangerous propensities, specifically, that Wilton knew Rodriguez had been convicted of manslaughter, and that he carried guns, used methamphetamine and threatened tenants while working for Wilton. The trial court granted Wilton's motion for summary judgment and Hawkins timely appealed.

Hawkins first argues Wilton did not meet his burden to show a lack of triable issues. We agree. Wilton's motion did not even purport to show that Hawkins could not prove his respondeat superior theory of recovery, that is that Rodriguez shot him while working for Wilton, and Hawkins appropriately raised this failing in the trial court. Because Wilton did not alternatively seek summary adjudication, we decline to address issues about those legal theories on which Wilton might possibly have prevailed. We reverse.

### STANDARD AND SCOPE OF REVIEW

We review summary judgment appeals by applying the same three-step analysis applied by the trial court: First, we identify the issues raised by the

pleadings. Second, we determine whether the movant established entitlement to summary judgment, that is, whether the movant showed the opponent could not prevail on any theory raised by the pleadings. Third, *if the movant has met its burden*, we consider whether the opposition raised triable issues of fact. We review these matters de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849–855, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*); *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334–335 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (*Guz*).)

■ As for defense motions, "we determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial . . . ." (*Guz, supra,* 24 Cal.4th at p. 334.) Wilton bore the burden "to make a prima facie showing of the nonexistence of any triable issue of material fact; *if he carries his burden of production, he causes a shift,* and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar, supra,* 25 Cal.4th at p. 850, italics added.)

"Where the evidence presented by defendant does not support judgment in his favor, the motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff." (*Duckett v. Pistoresi Ambulance Service, Inc.* (1993) 19 Cal.App.4th 1525, 1533 [24 Cal.Rptr.2d 304]; see *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832 [89 Cal.Rptr.2d 540] [plaintiff has no evidentiary burden unless the moving defendant has first met its initial burden]; *Villa v. McFerren* (1995) 35 Cal.App.4th 733, 743–746 [41 Cal.Rptr.2d 719] (*Villa*); Cal. Judges Benchbook: Civil Proceedings Before Trial (CJER 1995) Summary Judgment and Summary Adjudication Motions, §§ 13.43–13.45, pp. 681–683; *id.* (2005 update) § 13.45, p. 548 [defendant must "present *evidence* and not simply point out through *argument*" the facts to support summary judgment].)

As will be seen, we need not proceed beyond the second step of analysis because Wilton failed to carry his burden.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Pleadings

The first amended complaint alleged that on May 5, 2003, "and prior to that time" both Hawkins and Rodriguez were tenants of the complex and on

that date Rodriguez shot Hawkins. Wilton knew that Rodriguez had been convicted of voluntary manslaughter and served a prison term therefor. Wilton had been warned by other tenants that Rodriguez "was dangerous and was using illegal drugs (methamphetamines), 'tweeking on crank' (meaning over using said drug and being out of control), and carrying numerous different loaded firearms around the Kentfield Apartments complex." Wilton had been warned that Rodriguez "had pulled a gun several times on another tenant and that the tenants were frightened for themselves and their children for their own personal safety." Nonetheless, Wilton employed Rodriguez "as manager and night security guard."

This pleading explicitly captioned four legal theories. First, Wilton was liable as Rodriguez's employer (respondeat superior). Second, Wilton was negligent in hiring and retaining Rodriguez. Third, Wilton was negligent in not protecting tenants from foreseeable criminality. Fourth, Wilton had been negligent as a landlord in allowing a dangerous tenant to remain in possession.

Wilton denied these allegations and raised a number of affirmative defenses.

### B. The Motion for Summary Judgment

Wilton's motion raised one legal theory: "[B]ecause the shooting occurred outside the premises of the apartment complex between two individuals freely and voluntarily associating with each other, as a matter of public policy and as a matter of law, defendants had no duty to protect plaintiff."

Wilton tendered six alleged undisputed facts, as follows.

(1) The shooting occurred "in the city street and on the sidewalk outside the premises" of the complex.

(2) Rodriguez and Hawkins "were 'pretty good acquaintances' and 'pretty friendly' who worked together for several weeks and spoke and smoked cigarettes" together almost daily.

(3) Hawkins had warned Wilton's managers "a week or two before" that Rodriguez acted " 'weird,' " carried guns, and was " 'going to end up killing somebody or something.' "

(4) Hawkins continued to socialize with Rodriguez.

(5) Hawkins freely let Rodriguez into his apartment and willingly went with Rodriguez to the street.

(6) Hawkins and his fiancée, "who were much closer to [Rodriguez] than defendants, had no warning or factual information that would cause them to reasonably anticipate" that Rodriguez would hurt Hawkins.

### C. The Opposition

Hawkins pointed out in his written opposition and at the hearing that Wilton's facts and theory did not negate all theories of liability. Hawkins disputed some facts and their import and tendered other facts.

### Trial Court Ruling

The trial court sustained Wilton's objections to some evidence and over-ruled some of Hawkins's objections. As for respondeat superior, negligent hiring and retaining a dangerous tenant, the trial court ruled Hawkins's tendered evidence was inadmissible on various grounds. Based on purported gaps in Hawkins's opposition, the trial court found Rodriguez was not an employee or tenant "at the time of the shooting" and although "perhaps triable" whether the shooting took place on Wilton's property (as opposition evidence showed—*and as Wilton now concedes on appeal*), "Rodriguez's criminal conduct was not reasonably foreseeable under the circumstances here; and, imposing a duty and liability on Defendants for not having prevented Rodriguez from coming onto the property to visit his family or evicted the mother of his children and his children would be in violation of public policy."

Wilton's motion did not tender facts as to whether Rodriguez was a tenant or an employee or exercised apparent authority over the premises even if he was no longer employed, and no mention was made about his possible reasons for being on the property (e.g., to visit family). Nor did the motion address the knowledge Wilton allegedly had about Rodriguez's conviction, drug use, display of firearms at the complex and so forth, as alleged by Hawkins.

### DISCUSSION

The motion for summary judgment should have been denied because it did not refute tenable pleaded theories. As existing case law explains, because summary judgment deprives a party of his or her right to a jury trial, the

erroneous granting of a motion for summary judgment will ordinarily be reversible error and will be found harmless only where the trial court's error was technical. Here the trial court disregarded the statutory framework of summary judgment and improperly shifted the burden to Hawkins; the error was neither minor nor technical.

## I. Error

We review a summary judgment appeal in the footsteps of the trial court. Before even looking at Hawkins's evidence, we consider whether Wilton established a prima facie case for relief. He did not.

The facts tendered by Wilton do not address, far less negate, the theory that Rodriguez was Wilton's employee and was allowed to carry firearms although he was known by Wilton to be a convicted felon (convicted of a serious and violent felony, viz., voluntary manslaughter) and known to be an out-of-control methamphetamine user who had threatened tenants. An employer who allowed such conduct by a manager or security guard would not be insulated from respondeat superior liability simply because the tenant chose to socialize with the employee, or simply because the shooting took place on the sidewalk outside the apartment complex. Nor did Wilton's evidence or legal argument negate the theory that Wilton negligently retained Rodriguez as a tenant, despite the alleged obvious danger.

We briefly outline the substantive law supporting liability on the allegations of the complaint.

The employer of a security guard may be liable for the guard's assaults if the employer negligently hired the guard or negligently placed him in a position to commit foreseeable harmful acts. (See Annot., Torts—Security Guard Company (1986) 44 A.L.R.4th 620 [collecting cases]; Annot., Negligent Hiring of Security Guard (1990) 7 Am.Jur.3d Proof of Facts 345; *Easley v. Apollo Detective Agency, Inc.* (1979) 69 Ill.App.3d 920 [26 Ill.Dec. 313, 387 N.E.2d 1241] [plaintiff's verdict upheld where armed apartment security guard assaulted a tenant, but a proper background check would have revealed his unfitness for the position].) Here, allegedly, Wilton *actually knew* Rodriguez had been convicted of voluntary manslaughter, but allowed him to carry firearms on the job and ignored reports of his drug usage. (See Annot., Landlord's Employee—Criminal Conduct (1985) 38 A.L.R.4th 240, § 2 [liability hinges "on proving some connection between the duties performed by the employee as the landlord's agent and the employee's attack on the tenant, thereby showing that the employee was acting in the interests of his employer at the time of the assault"]; *id.*, §§ 3–4 [collecting cases upholding

liability for assaults where landlords allowed manager to carry guns, did not discover criminal background, ignored employee's violent tendencies, etc.].)

In our view an employer cannot allow a drug-addled convicted felon to carry and brandish loaded firearms during the course and scope of employment, particularly where, as here, the employment necessarily consists of making contact with members of the public, such as tenants and visitors to the complex. Such conduct merits liability because it should be discouraged, the victim should be compensated and the victim's losses should be borne by the enterprise causing the risk; moreover, liability will not impose an undue burden but will merely ensure that apartment owners who choose to employ security guards or managers will select, train and supervise them to avoid inflicting additional risks on their tenants. Wilton's motion failed to show Hawkins could not prove this theory at trial.

■ A landlord may also be liable for failing to address the presence of a dangerous tenant or other person on or about the property. (*Madhani v. Cooper* (2003) 106 Cal.App.4th 412, 415–416 [130 Cal.Rptr.2d 778] [landlord had duty of care to tenants to protect them from foreseeable attacks by another tenant; "the key issue here is foreseeability of harm"].) The California Supreme Court summarized the general rules of landlord liability as follows:

"*Ann M.* [*v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 [25 Cal.Rptr.2d 137, 863 P.2d 207]] announced the rule we follow today, namely that 'California law requires landowners to maintain land in their possession and control in a reasonably safe condition. [Citations.] In the case of a landlord, this general duty of maintenance, which is owed to tenants and patrons, has been held to include the duty to take reasonable steps to secure common areas against foreseeable criminal acts of third parties that are likely to occur in the absence of such precautionary measures. . . .' . . . We also observed that 'a duty to take affirmative action to control the wrongful acts of a third party will be imposed only where such conduct can be reasonably anticipated.' . . .

■ "In the case of a criminal assault, *Ann M.* held that the decision to impose a duty of care to protect against criminal assaults requires 'balancing the foreseeability of the harm against the burden of the duty to be imposed. . . . " '[I]n cases where the burden of preventing future harm is great, a high degree of foreseeability may be required. . . . On the other hand, in cases where there are strong policy reasons for preventing the harm, or the harm can be prevented by simple means, a lesser degree of foreseeability may be required.' . . ." . . . Or, as one appellate court has accurately explained, duty

in such circumstances is determined by a balancing of "foreseeability" of the criminal acts against the "burdensomeness, vagueness, and efficacy" of the proposed security measures.' " (*Wiener v. Southcoast Childcare Centers, Inc.* (2004) 32 Cal.4th 1138, 1146–1147 [12 Cal.Rptr.3d 615, 88 P.3d 517], citations omitted.)

Even if Rodriguez was no longer an employee or in apparent charge of the premises, if, as the complaint pleads, Wilton knew he frequented the premises while carrying a firearm and while intoxicated by methamphetamine, Hawkins may be able to prove Wilton failed to take reasonable steps to exclude Rodriguez from the premises. The tendered facts do not negate this theory of liability, they merely show Hawkins associated with Rodriguez and did not fear him, not that the landlord, *who allegedly knew of Rodriguez's manslaughter conviction, possession of guns and use of drugs,* had no duty to protect Hawkins from foreseeable harm, while Rodriguez was on drugs. Wilton's tendered facts did not establish that Hawkins knew Rodriguez used drugs or had a manslaughter conviction, only that he knew Rodriguez had guns and that Hawkins was apparently not afraid of a personal assault by Rodriguez. Just so; *had Wilton warned Hawkins that Rodriguez used drugs and was a convicted felon, perhaps Hawkins would have shunned Rodriguez.*

In any event, because the motion did not negate theories of employer liability, the trial court should have held that Wilton failed to carry his initial burden and stopped there.

In apparent response to Hawkins's emphatic position that Wilton had not shifted the burden, the trial court swallowed a red herring dragged through the papers by Wilton, who argued at the hearing that Hawkins's due process claim was meritless because the law "indicates that an alternative to the separate statement of undisputed facts is to challenge the plaintiff to prove the prima facie case. So there is no violation of due process here." Although nowhere in his papers did Wilton offer authority excusing the failure to make a prima facie case, the trial court ruled: "The court has discretion to consider facts/evidence not specifically referenced in the Separate Statement. [See CCP 437c(b); [*San Diego Watercrafts Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315–316 [125 Cal.Rptr.2d 499]].]"

The trial court misread the authority it relied on. *San Diego* does hold that a trial court has discretion to consider evidence "not referenced in the moving party's separate statement" when ruling on summary judgment. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank, supra,* 102 Cal.App.4th 308, 316 (*San*

*Diego*).) However, the trial court overlooked the next passage of *San Diego*, as follows:

 "In exercising its discretion whether or not to consider evidence undisclosed in the separate statement, the court should also consider due process implications noted in *United Community Church* [*v. Garcin* (1991) 231 Cal.App.3d 327 [282 Cal.Rptr. 368]]. 'The due process aspect of the separate statement requirement is self evident—to inform the opposing party of the evidence to be disputed to defeat the motion.' [*Id.* at p. 337.]

"Here, the evidence not only was omitted from the separate statement, it also was not filed until after assignee had responded to the issues raised in the separate statement. In considering this evidence, the court violated assignee's due process rights. Assignee was not informed what issues it was to meet in order to oppose the motion. Where a remedy as drastic as summary judgment is involved, due process requires a party be fully advised of the issues to be addressed and be given adequate notice of what facts it must rebut in order to prevail." (*San Diego, supra*, 102 Cal.App.4th at p. 316.)

Thus, *San Diego, supra*, 102 Cal.App.4th 308, 316, does not salvage the trial court's ruling because the "issues to be addressed" in this case, *as defined by Wilton's motion*, did *not* entitle Wilton to summary judgment. (See *Fenn v. Sherriff* (2003) 109 Cal.App.4th 1466, 1480–1483 [1 Cal.Rptr.3d 185] [emphasizing due process limits to the discretion recognized by *San Diego*].)

Nor was this a case where the defendant relied on a plaintiff's "factually devoid" discovery, that is, plaintiff's lack of evidence, as Wilton asserted in his reply brief in the trial court. Wilton's motion merely contained an unsworn assertion of counsel, without citation to evidence *or lack of evidence by Hawkins*, that Rodriguez was not an employee. *Wilton's motion did not rely* on "factually insufficient discovery responses" as Wilton led the trial court to believe. Bald assertions by Wilton's counsel did not shift any burden to Hawkins. "Regardless of the evidence that [plaintiff] could, or did, offer, the *lack of evidence submitted by defendants* was fatal to summary judgment." (*Consumer Cause, Inc. v. SmileCare* (2001) 91 Cal.App.4th 454, 477 [110 Cal.Rptr.2d 627], original italics.)

In a procedurally similar case, a complaint alleged a number of theories arising from a slip-and-fall accident, and the defense summary judgment motion tried to show that grapes on the floor which caused the accident were "transient" and, presumably, unforeseeable. The trial court granted summary judgment, overlooking a pleaded theory that the floor had an unreasonably

slippery finish. (*Lopez v. Superior Court* (1996) 45 Cal.App.4th 705, 715–717 [52 Cal.Rptr.2d 821].) The Court of Appeal granted a writ of mandate, concluding that the motion had not addressed all theories in the complaint and therefore summary judgment should not have been entered. (*Id.* at p. 717; see *Cox v. State of California* (1970) 3 Cal.App.3d 301, 310 [82 Cal.Rptr. 896] [" 'a plaintiff who has pleaded a cause of action on either of two theories will not be subject to defeat by summary judgment because the defendant has established by an uncontradicted affidavit that *one* of the two theories (but not necessarily the other) cannot be established' "].)

Nor is this a case where "the moving party has overlooked the legal significance of a material fact," that is, overlooked a dispositive legal ground *based on the tendered facts. (Juge v. County of Sacramento* (1993) 12 Cal.App.4th 59, 69–70 [15 Cal.Rptr.2d 598].) Here, the tendered facts were themselves deficient.

Nor is this a case where the opposition evidence filled a gap in the evidence supporting the movant's summary judgment theory: As stated, Wilton did not raise the theory that Rodriguez was not an employee or tenant at the time he shot Hawkins. (Cf. *Villa, supra,* 35 Cal.App.4th at pp. 749–751.)

The trial court should have denied Wilton's motion.

## II. Prejudice

"No judgment shall be set aside . . . for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (Cal. Const., art. VI, § 13.)

It has been said that the erroneous granting of a summary judgment motion "lies outside the curative provisions" of the harmless error provision of the California Constitution because such an error denies a party of its right to a jury trial. (*Callahan v. Chatsworth Park, Inc.* (1962) 204 Cal.App.2d 597, 610 [22 Cal.Rptr. 606], cited with approval on this point by *Dvorin v. Appellate Dept.* (1975) 15 Cal.3d 648, 651 [125 Cal.Rptr. 771, 542 P.2d 1363]; see *Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134] (*Mann*) [because summary judgment denies the right to a trial, it is a "drastic" remedy].)

Despite this lofty statement, purely technical errors in granting summary judgment can be found harmless. (E.g., *Byars v. SCME Mortgage Bankers,*

*Inc.* (2003) 109 Cal.App.4th 1134, 1146 [135 Cal.Rptr.2d 796] [failure to state reasons for granting motion as required by statute harmless].) But here, the error was not technical. The stated theory of the motion and the six tendered facts did not add up to a defense to the complaint. Thus, under well-settled law as explained above (pt. I, *ante*), Wilton was not entitled to avoid trial by means of summary judgment.

Although no prima facie case was stated by Wilton's motion, it was quite rational for Hawkins to try to anticipate what other facts or evidence or arguments Wilton might make, after first pointing out to the trial court the fundamental flaw in Wilton's motion. (*Boyle v. CertainTeed Corp.* (2006) 137 Cal.App.4th 645, 650 [40 Cal.Rptr.3d 501] (*Boyle*) [no waiver inferred where party objects and prophylactically replies on merits].) But in our view, it would be inappropriate to review Hawkins's evidence and Wilton's reply thereto in an effort to salvage the judgment. First, it would encourage sloppy motion practices. Second, it casts an unfair burden on this court. Third, most importantly, in these circumstances Hawkins was unfairly placed on the . defensive and we simply cannot say that he was able to muster his best case in reply. Other courts have held that simply *shortening time* on summary judgment motions is reversible error. (*Boyle, supra,* 137 Cal.App.4th 645 [local rule expediting summary judgments in asbestos cases invalid]; *Urshan v. Musicians' Credit Union* (2004) 120 Cal.App.4th 758, 765–766 [15 Cal.Rptr.3d 839] [order shortening time for notice "tantamount" to denial of due process and "bordered on" deprivation of fair trial].)

We agree with the gist of those decisions, that it violates the statutory scheme and is fundamentally unfair to turn a summary judgment proceeding into a device by which defendants can force a plaintiff's hand without first satisfying their own burden to demonstrate a prima facie case. In a case which invalidated a local rule allowing a defendant to move for summary judgment with an attorney declaration the court emphasized: "A motion for summary judgment must be supported by evidence, and it is the moving party who bears the initial burden of producing evidence. [Citation.] General Order No. 157 improperly shifts this burden of producing evidence to the nonmoving party by allowing a defendant to move for summary judgment upon an unsubstantiated attorney declaration that plaintiff has not identified evidence of asbestos exposure in his or her discovery responses, which then obligates plaintiff to present evidence establishing a triable issue of fact as to exposure. A defendant moving for summary judgment must present evidence, not simply argument." (*Boyle, supra,* 137 Cal.App.4th at p. 655.)

And the words of another court seem apt:

"Contrary to what may be a widespread belief among the bench and bar of this district, we do not gleefully go about fabricating ad hoc, 'technical' reasons to overturn every grant of summary judgment presented to this court for review. Section 437c is a complicated statute. There is little flexibility in the procedural imperatives of the section, and the issues raised by a motion for summary judgment (or summary adjudication) are pure questions of law. As a result, section 437c is unforgiving; a failure to comply with any one of its myriad requirements is likely to be fatal to the offending party.

"Section 437c thus does not furnish the trial courts with a convenient procedural means, to which only 'lip service' need be given, by which to clear the trial calendar of what may appear to be meritless or weak cases. [Citation.] Any arbitrary disregard of the statutory commands in order to bring about a particular outcome raises procedural due process concerns. [Citation.] Motions for summary judgment cannot therefore properly be decided by employing a sort of detached 'smell test.' The success or failure of the motion must be determined, as we have done here, by application of the required step-by-step evaluation of the moving and opposing papers. [Citation.] In that way, 'due regard' will be given to the right of those persons asserting claims 'that are adequately based in fact to have those claims . . . tried to a jury' as well as to the 'rights of persons opposing such claims . . . to demonstrate in the manner provided by [section 437c] that the claims . . . have no factual basis.' " (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1607 [50 Cal.Rptr.2d 431].)

As shown above, the procedures in this case excused Wilton from carrying his fundamental burden. We decline to find such an egregious violation of the statutory scheme to be harmless. As the late Presiding Justice Robert K. Puglia observed: "It is academic that the burden is on the party moving for summary judgment; because of the drastic nature of the remedy sought, he is held to strict compliance with the procedural requisites." (*Department of General Services v. Superior Court* (1978) 85 Cal.App.3d 273, 284 [147 Cal.Rptr. 422]; see *Mann, supra*, 38 Cal.3d at p. 35.)

Finally, it is improper to grant summary adjudication absent a motion therefor. (See *Jimenez v. Protection Life Ins. Co.* (1992) 8 Cal.App.4th 528, 534–535 [10 Cal.Rptr.2d 326]; *Gonzales v. Superior Court* (1987) 189 Cal.App.3d 1542, 1545–1546 [235 Cal.Rptr. 106].) Therefore, because Wilton did not move in the alternative for summary adjudication of specified issues, we will not address whether Wilton may have prevailed on some issues in this case. (See, e.g., *Eric J. v. Betty M.* (1999) 76 Cal.App.4th 715, 720–725 [90 Cal.Rptr.2d 549].)

## DISPOSITION

The judgment is reversed with directions to the trial court to vacate its ruling on summary judgment and enter a new order denying the motion. Wilton shall pay Hawkins's costs of this appeal. (Cal. Rules of Court, rule 27(a)(2).)

Raye, Acting P. J., and Cantil-Sakauye, J., concurred.