Filed 7/21/15  Lee v. Greyhound Lines, Inc. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| QER LEE et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>GREYHOUND LINES, INC.,<br><br>Defendant and Respondent. | C073948<br><br>(Super. Ct. No. 34200900035502CUPAGDS) |

This products liability case arose out of a bus crash in 2008.  The bus at issue was manufactured for defendant Greyhound Lines, Inc. (Greyhound) in 1993 according to specifications Greyhound provided.  Although Greyhound did not own, operate, or otherwise control the bus after August 2005, plaintiffs sued Greyhound for the injuries and deaths resulting from the crash, claiming the bus was defective because it lacked passenger seat belts, other appropriate safety restraints in the passenger seats, and appropriate warnings.

1

Greyhound successfully moved for summary judgment, but Greyhound's motion addressed only the lack of passenger seat belts; it did not address the lack of other passenger safety restraints or the lack of adequate warnings. On appeal, plaintiffs contend (among other things) that the trial court erred in granting summary judgment because Greyhound failed to show that *all* of plaintiffs' theories as to why the bus was defective lacked merit. We agree and will therefore reverse.

FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed: The bus (or motorcoach) that is the subject of this action was a 1993 model MC-12 manufactured for Greyhound by Motor Coach Industries pursuant to a document known as the 1993 coach purchase agreement, which incorporated specifications Greyhound provided. At the time the bus was manufactured, neither Motor Coach Industries nor any other manufacturer of motorcoaches for sale in North America offered passenger seat belts as standard or optional equipment because design standards for the installation of such belts had yet to be developed.

In December 1993, a year after purchasing the bus from Motor Coach Industries, Greyhound sold the bus to Nationsbanc Lease Investments (Nationsbanc). Greyhound then leased the bus back from Nationsbanc and operated the bus as part of its intercity fleet until August 2005. At that time, Greyhound returned the bus under the terms of the lease, and thereafter Greyhound did not own, operate, or otherwise control the bus. At no time during the period Greyhound controlled the bus from 1993 through 2005 did Motor Coach Industries or any other recognized source offer the installation of retrofit passenger seat belts because design standards for the installation of passenger seat belts had yet to be developed.

In October 2008, the bus crashed in Colusa County, killing 11 passengers and injuring 29. At the time, the bus was being operated by Cobb's Bus Service. The plaintiffs in this action are the passengers who were injured, the surviving heirs of the passengers who were killed, and three spouses of passengers who were injured.

Plaintiffs' second amended complaint, filed in January 2012, contains causes of action for negligence, strict liability, breach of implied warranty, breach of express warranty, loss of consortium, wrongful death, and survival. In their general allegations, plaintiffs alleged that Greyhound "had the Motor Coach built to its specifications and participated in the planning, analysis, design, fabricating, manufacturing, testing, inspection, advertising, promotion, distribution and selling of the vehicle." Plaintiffs further alleged that their "injuries and damages . . . were proximately caused by the absence of seatbelts or other appropriate safety restraints in the Motor Coach's passenger seats, the absence of appropriate warnings, and the other wrongful conduct, acts and omissions alleged herein."

In their negligence cause of action, plaintiffs alleged that "[d]efendants so negligently and carelessly planned, analyzed, designed, tested, manufactured, fabricated, assembled, tested, inspected, labeled, marketed, promoted, advertised, distributed, merchandized, recommended, certified, sold, leased or otherwise furnished the Motor Coach . . . without passenger seatbelts being installed and without appropriate warnings or instructions that the Motor Coach was . . . a defective and dangerous product." In their strict liability cause of action, plaintiffs alleged that "the Motor Coach was . . . unsafe for its intended use by reasons of defects in its design, manufacture, fabrication, assembly, testing or lack of testing, inspection or lack of inspection, labeling or lack of labeling, and warnings or failures to warn. Specifically and particularly, the Motor Coach lacked passenger safety belts or other passive restraint systems, and as a proximate result the Motor Coach while being used normally and in the intended fashion failed to protect against, and allowed, fatal and other injuries to the passengers. The Motor Coach was defective in that it lacked any form of a passenger restraint system, including seatbelts."

In September 2012, Greyhound moved for summary judgment or summary adjudication of all seven causes of action. In its notice of motion, Greyhound asserted that the cause of action for negligence had no merit for the following reasons:

(1) Greyhound "did not own, operate, or otherwise control the subject motorcoach at any time after August 9, 2005 and therefore had no duty arising out of any alleged ownership, operation, or control at the time of the subject accident."

(2) Greyhound "had no control over [Motor Coach Industries'] internal decision whether to offer passenger seat belts on its motorcoaches and therefore had no ability nor any duty arising out of such control."

(3) "[N]o manufacturer of motorcoaches for sale in North America in 1993 offered passenger seat belts as standard or optional equipment, and therefore [Greyhound] had no ability nor any duty to install or direct [Motor Coach Industries] to install passenger seat belts on the subject motorcoach at the time of manufacture."

(4) " '[R]etrofit' restraints were not available from [Motor Coach Industries] or any other source at any time from 1993 through 2005 and therefore [Greyhound] had no ability nor any duty to retrofit or direct the retrofit of the subject motorcoach with passenger seat belts while the subject motorcoach was under its control."

As for the cause of action for strict liability, Greyhound asserted it had no merit "because [Greyhound] was not a part of the marketing enterprise for the subject motorcoach." Greyhound asserted the warranty causes of action had no merit because plaintiffs had expressly abandoned those causes of action and asserted the remaining causes of action for loss of consortium, wrongful death, and survival had no merit because they were wholly derivative of the first four causes of action.

At the hearing on the motion, plaintiffs argued (among other things) that Greyhound's motion did not address their theory that the bus was defective because it lacked "a passive restraint system." Nevertheless, the trial court granted summary adjudication on all seven causes of action and summary judgment to Greyhound in February 2013. Plaintiffs moved for a new trial and in their reply argued that Greyhound's summary judgment motion had not addressed "the failure to warn theory or the passive passenger restraint hypothesis." The trial court denied the new trial motion,

4

asserting that what was "[a]t issue was whether Greyhound should have installed seat belts for the passengers in the bus."

In April 2013, on the same day the trial court denied their new trial motion, plaintiffs appealed from the order granting summary judgment and from the judgment, even though no judgment had yet been entered.[1] In August 2014, the court finally entered judgment in favor of Greyhound and plaintiffs timely appealed from that judgment.

## DISCUSSION

On appeal, plaintiffs offer numerous arguments as to why the trial court erred in granting summary judgment in favor of Greyhound. We find the first argument -- that Greyhound failed to show that *all* of plaintiffs' theories of liability lacked merit -- dispositive, and therefore we need not address plaintiffs' remaining arguments.

As relevant here, plaintiffs' second amended complaint alleged that Greyhound "had the Motor Coach built to its specifications and participated in the planning, analysis, design, fabricating, manufacturing, testing, inspection, advertising, promotion, distribution and selling of the vehicle." Plaintiffs further alleged that their "injuries and damages . . . were proximately caused by the absence of seatbelts or other appropriate safety restraints in the Motor Coach's passenger seats, the absence of appropriate warnings, and the other wrongful conduct, acts and omissions alleged herein." In their negligence cause of action in particular, plaintiffs alleged that "[d]efendants so negligently and carelessly planned, analyzed, designed, tested, manufactured, fabricated, assembled, tested, inspected, labeled, marketed, promoted, advertised, distributed,

---

[1] On the same day the trial court denied the new trial motion and plaintiffs filed their notice of appeal, Greyhound served a notice of entry of judgment, asserting that judgment was entered in February 2013. The document Greyhound called the judgment, however, was merely the order granting the summary judgment motion.

5

merchandized, recommended, certified, sold, leased or otherwise furnished the Motor Coach . . . without passenger seatbelts being installed and without appropriate warnings or instructions that the Motor Coach was . . . a defective and dangerous product." In their strict liability cause of action, they alleged that "the Motor Coach was . . . unsafe for its intended use by reasons of defects in its design, manufacture, fabrication, assembly, testing or lack of testing, inspection or lack of inspection, labeling or lack of labeling, and warnings or failures to warn. Specifically and particularly, the Motor Coach lacked passenger safety belts or other passive restraint systems, and as a proximate result the Motor Coach while being used normally and in the intended fashion failed to protect against, and allowed, fatal and other injuries to the passengers. The Motor Coach was defective in that it lacked any form of a passenger restraint system, including seatbelts."

Based on these allegations, plaintiffs contend their causes of action "for strict and negligent product liability w[ere] predicated on four main factual theories. First, that the Greyhound bus was defective as designed and manufactured because it lacked seat belts; second, that the bus was defectively designed because it lacked passive passenger restraints (ie. [*sic*] air bags and safety handles); and third, the bus lacked safety warnings that would have warned passengers before they got on the bus of the absence of safety equipment on the bus. . . . Fourth, [plaintiffs] alleged that [Greyhound] was separately liable under strict product liability theory for placing the defective product into the stream of commerce." According to plaintiffs, however, Greyhound's motion "attacked [only their] absence of seat belt theory and their stream of commerce theory. What [Greyhound] did not do was specifically address [their] other two theories of liability, to wit, that [Greyhound] was liable because the motorcoach lacked passive passenger safety restraints (ie. [*sic*] air bags or safety handle bars) and that the bus lacked safety warnings that the motorcoach was not equipped with any of these crash worthiness safety features." In plaintiffs' view, this omission was fatal to Greyhound's motion because a defendant is

6

not entitled to summary judgment unless the defendant shows that *all* of the plaintiff's legal theories are without merit.

Plaintiffs are correct. "We review summary judgment appeals by applying the same three-step analysis applied by the trial court: First, we identify the issues raised by the pleadings. Second, we determine whether the movant established entitlement to summary judgment, that is, whether the movant showed the opponent could not prevail on any theory raised by the pleadings. Third*, if the movant has met its burden*, we consider whether the opposition raised triable issues of fact. We review these matters de novo." (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 939-940.)

We begin with the issues raised by the pleadings. We agree with plaintiffs that, when liberally construed, the allegations of their second amended complaint can be reasonably read to assert that Greyhound was liable, either in negligence or in strict liability, because the bus did not have (1) passenger seat belts, (2) any "other appropriate safety restraints in [its] passenger seats," or (3) appropriate warnings.[2] (See *Rosencrans v. Dover Images, Ltd.* (2011) 192 Cal.App.4th 1072, 1088 ["[w]hen reviewing a grant of a motion for summary judgment, we must resolve every reasonable doubt in favor of the plaintiffs when looking at the complaint"].) Thus, the question is whether Greyhound showed that plaintiffs could not prevail on *any* of these theories of liability. We agree with plaintiffs that Greyhound did not make that showing.

In its motion, Greyhound asserted that plaintiffs' cause of action for negligence had no merit for the following reasons:

---

[2] The negligence cause of action does not specifically mention other safety restraints, but the general allegations do, and those general allegations were incorporated by reference in the negligence cause of action.

7

(1) Greyhound "did not own, operate, or otherwise control the subject motorcoach at any time after August 9, 2005 and therefore had no duty arising out of any alleged ownership, operation, or control at the time of the subject accident."

(2) Greyhound "had no control over [Motor Coach Industries'] internal decision whether to offer passenger seat belts on its motorcoaches and therefore had no ability nor any duty arising out of such control."

(3) "[N]o manufacturer of motorcoaches for sale in North America in 1993 offered passenger seat belts as standard or optional equipment, and therefore [Greyhound] had no ability nor any duty to install or direct [Motor Coach Industries] to install passenger seat belts on the subject motorcoach at the time of manufacture."

(4) " '[R]etrofit' restraints were not available from [Motor Coach Industries] or any other source at any time from 1993 through 2005 and therefore [Greyhound] had no ability nor any duty to retrofit or direct the retrofit of the subject motorcoach with passenger seat belts while the subject motorcoach was under its control."

As for plaintiffs' cause of action for strict liability, Greyhound asserted it had no merit "because [Greyhound] was not a part of the marketing enterprise for the subject motorcoach."

In support of its motion for summary judgment on these grounds, Greyhound offered the following relevant undisputed facts: The bus was a 1993 model MC-12 manufactured by Motor Coach Industries and sold to Greyhound pursuant to the 1993 coach purchase agreement in December 1992. In 1993, neither Motor Coach Industries nor any other manufacturer of motorcoaches for sale in North America offered passenger seat belts as standard or optional equipment because design standards for the installation of such belts had yet to be developed.

A year after buying the bus from Motor Coach Industries, Greyhound sold the bus to Nationsbanc Lease Investments in December 1993. Greyhound then leased the bus back from Nationsbanc and operated the bus as part of its intercity fleet until August

8

2005. At that time, Greyhound returned the bus under the terms of the lease, and thereafter Greyhound did not own, operate, or otherwise control the bus. At no time during the period Greyhound controlled the bus from 1993 through 2005 did Motor Coach Industries or any other recognized source offer the installation of retrofit passenger seat belts because design standards for the installation of passenger seat belts had yet to be developed.

It is readily apparent from examination of the grounds Greyhound asserted for summary judgment and the facts Greyhound offered in support of its motion for summary judgment that Greyhound failed to address two theories of liability advanced in plaintiffs' second amended complaint: specifically, the theory of Greyhound's liability predicated on the lack of appropriate safety restraints other than passenger seat belts and the theory of liability predicated on the lack of appropriate warnings. Essentially, Greyhound's motion rested on the fact that in 1993, when the bus was manufactured, neither Motor Coach Industries nor any other manufacturer of motorcoaches for sale in North America offered passenger seat belts as standard or optional equipment, and the fact that from 1993 through 2005, when Greyhound controlled the bus, neither Motor Coach Industries nor any other recognized source offered the installation of retrofit passenger seat belts. In other words, Greyhound asserted -- and offered evidence to establish -- that the bus was not defective because Greyhound could not have provided passenger seat belts on the bus at the time of its manufacture or at any time Greyhound was in control of the bus. In making this showing, however, Greyhound failed to address plaintiffs' theory that the bus was defective because it lacked other appropriate passenger safety devices and the theory that the bus was defective because it lacked appropriate warnings of the lack of any passenger safety devices. By failing to address these two alternate theories of liability in its motion, Greyhound failed to carry its burden of showing that plaintiffs could not prevail on *any* theory raised by the pleadings.

9

On appeal, Greyhound offers several arguments on this subject, but none of them is persuasive. First, Greyhound asserts that plaintiffs' argument regarding types of passenger restraints other than seat belts is "new" because the second amended complaint "does not mention grip bars or airbags; the only safety restraint mentioned is seatbelts." In effect, Greyhound asserts that its potential liability for failing to equip the bus with passenger safety restraints other than seat belts was not an issue raised by the pleadings and therefore was not an issue Greyhound was required to address in its summary judgment motion. This argument is not persuasive, however, because, as we have concluded already, the second amended complaint, liberally construed, *does* allege liability based on "the absence of . . . other appropriate safety restraints" and *does* assert that the bus was defective because "it lacked *any* form of passenger restraint system, including seatbelts." (Italics added.) The failure to specifically mention grip bars or airbags, either in the complaint itself, or subsequently in answers to interrogatories,[3] is not fatal given that plaintiffs predicated their assertion of liability in their complaint more broadly on the lack of *any* appropriate passenger safety device, be it a seat belt or some other device.

Next, Greyhound asserts that "[t]his issue has been forfeited" because plaintiffs "did not raise this issue in their opposition to [Greyhound's] motion, and proffered no evidence at all about these design features." (Underlining omitted.) We disagree. To the extent Greyhound relies on the principal that "[i]ssues not pursued in the trial court generally cannot be raised for the first time on appeal," that principal is inapposite

---

[3] Greyhound complains that plaintiffs did not mention grip bars or airbags in their answer to an interrogatory that sought the factual basis for plaintiffs' allegation that Greyhound was negligent. Much like in their complaint, however, in that interrogatory answer plaintiffs asserted that Greyhound "knew the dangers posed to passengers in using the subject bus without *passenger restraint devices*" and that Greyhound "knew or should have known, of recommendations by governmental entities that busses should have *passenger restraint devices* available for passengers." (Italics added.)

because, as Greyhound itself acknowledges, plaintiffs *did* raise this issue in the trial court -- specifically, at the hearing on Greyhound's motion. Plaintiffs also raised this issue in arguing their motion for a new trial.

To the extent Greyhound contends plaintiffs had an obligation to raise the issue earlier, in their opposition papers to the motion for summary judgment, Greyhound offers no authority to support that contention. Moreover, Greyhound's more specific contention that plaintiffs were obligated to proffer *evidence* regarding "grip bars and airbags" in opposition to Greyhound's motion evidences a fundamental misunderstanding of the summary judgment process. As we have explained, it was *Greyhound's* burden, as the moving party, to show that plaintiffs "could not prevail on any theory raised by the pleadings." (*Hawkins v. Wilton*, *supra*, 144 Cal.App.4th at pp. 939-940.) Until Greyhound carried that burden, the burden never shifted to plaintiffs to produce any evidence at all, and plaintiffs cannot be faulted for failing to do so. (See *ibid.*)

Because Greyhound's summary judgment motion addressed only the bus's lack of passenger seat belts and did not address its lack of other passenger safety devices or its lack of appropriate warnings, Greyhound failed to carry its initial burden on summary judgment of showing that *all* of plaintiffs' theories as to why the bus was defective were without merit. Accordingly, the trial court erred in granting summary judgment and erred in granting summary adjudication on plaintiffs' causes of action for negligence and strict liability, as well as the three derivative causes of action (loss of consortium, wrongful death, and survival). The trial court did *not* err, however, in granting summary adjudication on plaintiffs' causes of action for breach of implied and express warranties because plaintiffs expressly conceded that they were no longer pursuing those causes of action.

DISPOSITION

The judgment is reversed, and the case is remanded to the trial court with directions: (1) to vacate its order granting summary judgment and summary adjudication

11

as to all causes of action; and (2) to enter a new order denying summary judgment and summary adjudication of the causes of action for negligence, strict liability, loss of consortium, wrongful death, and survival, but granting summary adjudication of the causes of action for breach of implied warranty and breach of express warranty. Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


       ROBIE       , J.


We concur:


     NICHOLSON    , Acting P. J.


     MURRAY      , J.

12