Filed 1/7/25  Sanders v. Dept. of Corrections and Rehabilitation CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| HOLLY SANDERS, | |
| Plaintiff and Appellant, | E082238 |
| v. | (Super.Ct.No. CVRI2105886) |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, CALIFORNIA INSTITUTION FOR WOMEN et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Irma Poole Asberry, Judge.  Reversed with directions.

McCune Law Group, Joseph L. Richardson, Steven A. Haskins and Andrew W. Van Ligten for Plaintiff and Appellant.

Rob Bonta, Attorney General, Chris A. Knudsen, Assistant Attorney General, Alice Quinton and Melissa A. Lewis, Attorneys General, for Plaintiff and Respondent.

1

Plaintiff and appellant Holly Sanders (Employee) sued her employer, California Department of Corrections and Rehabilitation (the Department), alleging racial discrimination and harassment. The trial court granted the Department's motion for summary judgment. Employee contends the trial court erred. We reverse with directions.

## FACTS[1]

Employee worked for the Department as a correctional officer. Employee began working for the Department in 2001 and worked at the California Institution for Men in Chino. In November 2018, Employee "applied for and obtained a transfer to the Rainbow Fire Camp (Rainbow Camp)." Jonathan Rodriguez (Supervisor) supervised Employee at Rainbow Camp.

Employee is African-American. "[O]n at least one occasion, [Supervisor] said, 'I don't understand your people.' " "[Supervisor's] use of derogatory comments about 'your people' was 'quite frequent' and occurred on multiple occasions."

Supervisor alleged Employee engaged in misconduct at work. Supervisor reported his allegations to the warden for the purpose of having an investigation conducted into Employee's alleged misconduct. In January 2021, "Warden Mona Houston requested that the Office of Internal Affairs conduct an investigation into [the] allegations of misconduct against [Employee]." Due to the investigation, Employee was transferred from working in the camp to working at the California Institution for

---

[1] If the facts are familiar, it is because this court previously addressed this case in *Rodriguez v. Superior Court* (Feb. 22, 2024, E082288) [nonpub. opn.].

2

Women.  Also during the investigation, Employee applied for a promotion to sergeant at other prisons operated by the Department.  Employee was denied the promotion due to the pending investigation.

The investigation, which began in January 2021, concluded in November 2021. "None of the allegations against [Employee] were sustained . . . .  At the conclusion of the investigation, [Employee] transferred back to [a camp assignment]."

**DISCUSSION**

A.      STANDARD OF REVIEW

"In reviewing a grant of summary judgment, we independently evaluate the record, liberally construing the evidence supporting the party opposing the motion, and resolving any doubts in his or her favor.  [Citation.]  As the moving party, [the Department] must show that [Employee] has not established, and reasonably cannot be expected to establish, one or more elements of the cause of action in question." (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500 (*Patterson*).)

B.      FIRST CAUSE OF ACTION:  EMPLOYMENT DISCRIMINATION

Employee's first cause of action alleged racial discrimination by the Department. (Gov. Code, § 12940, subd. (a).)  The elements of a discrimination cause of action include "that the plaintiff:  (1) was a member of a protected class; (2) . . . was performing competently in the position . . . she held; (3) suffered an adverse employment action; and (4) was subject to some other circumstance suggesting discriminatory motive."  (*Diego v. City of Los Angeles* (2017) 15 Cal.App.5th 338, 350.)

Employee asserts she was discriminated against due to her race, which is a protected class. (Gov. Code, §§ 12926, subd. (o), 12940, subd. (a).) Employee worked for the Department for 20 years. Further, Supervisor's allegations against Employee were investigated, and none of the allegations were sustained. One could conclude from those facts that Employee was competent to perform her job.

An employment action is adverse when it " 'materially affect[s] the terms, conditions, or privileges of employment.' [Citations.] '[T]he determination of whether a particular action or course of conduct rises to the level of actionable conduct should take into account the unique circumstances of the affected employee as well as the workplace context of the claim.' . . . [The law] 'protects an employee against unlawful discrimination with respect . . . to . . . the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." (*Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1161-1162.)

Employee applied for a promotion to Sergeant but was denied the promotion due to the investigation. The denial of a promotion could be viewed as an adverse employment action because it negatively affects Employee's career advancement.

Finally, we examine whether "the adverse action occurred under some circumstance suggesting discriminatory motive." (*Hoglund v. Sierra Nevada Memorial-Miners Hospital* (2024) 102 Cal.App.5th 56, 74.) "In the employment context, ' "cat's paw" refers to a situation in which a biased [employee], who lacks

4

decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action.' " (*Id.* at p. 76.)

The January 2021 investigation was ordered by Warden Mona Houston in response to the allegations made by Supervisor. One could conclude that by reporting his allegations and requesting an administrative inquiry, Supervisor played a critical role in triggering the investigation, which caused the adverse employment action, e.g., Employee being denied a promotion to Sergeant.

"[Employee] stated that, on at least one occasion, [Supervisor] said, 'I don't understand your people.' [Employee] could not recall how many times [Supervisor] used a phrase like 'your people' when speaking with [Employee]." One could conclude that the use of the phrase "your people," indicates racial hostility on the part of Supervisor. Because the allegations against Employee were not sustained following an investigation, one could infer that Supervisor's motive in making the unfounded allegations was racial bias against Employee.

In the trial court's ruling, it wrote, "[Supervisor] made at least one comment about 'you people' to [Employee]. [Supervisor] did not reference [Employee's] race or heritage. . . . Here, the comment is not racial in nature." In Employee's administrative complaint, she alleged that Supervisor said to her " 'I can't stand your people.' [Employee] asked, '[W]hat did you say?' and [Supervisor] replied, 'You know what I mean, I can't stand your people' and walked away from [Employee]." In liberally construing this evidence in favor of Employee (*Patterson*, *supra*, 60 Cal.4th at pp. 499-500), one could conclude that "your people" referred to African-American people.

5

Therefore, we reject the trial court's conclusion that the comment could not be found to be racist.

The Department asserts that the phrase "your people" could refer to correctional officers, in that Supervisor was a lieutenant while Employee was a correctional officer. On summary judgment, we draw inferences in favor of Employee—not the Department. (*Patterson*, *supra*, 60 Cal.4th at pp. 499-500.) Therefore, at this stage, when deciding what "your people" might mean, we infer it has a racist meaning.

The Department contends the actions taken against Employee were not motivated by racial animus because similar actions were taken against other employees who are not African-American. As discussed in the paragraph *ante*, there is evidence that viewed in favor of Employee, the phrase could support a finding of racial animus. If there is also evidence of an unbiased motive for the actions, then there is a triable issue of fact on the matter.

In the trial court's ruling, it wrote, "Even if [the denial of a promotion] is an adverse employment action, [Employee] was not promoted to sergeant while she was under investigation because she was under investigation, not because of her race." We disagree with the trial court's conclusion because one could conclude that Supervisor requested Employee be investigated due to racial bias and in order to cause adverse actions for her career, such as being denied promotions. In that scenario, when Employee was denied the promotion due to the investigation, it comes back to Supervisor, who allegedly abused the complaint process to harm Employee's career for racist reasons, i.e., the cat's-paw theory. (See *Reeves v. Safeway Stores, Inc.* (2004) 121

6

Cal.App.4th 95, 100 ["Here the evidence raised triable issues as to the existence and effect of retaliatory motive on the part of the supervisor, and as to whether the manager and the intermediate investigator acted as tools or 'cat's paws' for the supervisor, that is, instrumentalities by which his retaliatory animus was carried into effect to plaintiff's injury"].)

The Department asserts that, if this court concludes Employee has a prima facie case of discrimination, then the Department has met its burden to provide a non-discriminatory reason for its actions. At trial, "[o]nce an employee establishes a prima facie case, a presumption of discrimination arises, and the employer is required to offer a legitimate, nondiscriminatory reason for the adverse employment action." (*Galvan v. Dameron Hospital Assn.* (2019) 37 Cal.App.5th 549, 558-559.)

By contrast, in a summary judgment motion, " ' "[T]he employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory factors." ' [Citation.] 'If the employer meets its initial burden, the burden shifts to the employee to "demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus, such that a reasonable trier of fact could conclude that the employer engaged in intentional discrimination or other unlawful action." ' " (*Galvan v. Dameron Hospital Assn.*, *supra*, 37 Cal.App.5th at pp. 558-559.)

In Employer's separate statement of undisputed facts, it set forth the following fact: "[Employee] stated that, on at least one occasion, [Supervisor] said, 'I don't understand your people.' [Employee] could not recall how many times [Supervisor] used a phrase like 'your people' when speaking with [Employee]." One could view the phrase "your people" as racist, and "I don't understand your people" as demeaning. Therefore, in Employer's statement of undisputed facts, there is a fact indicating Supervisor may have harbored racial animosity. As a result, the Department has not conclusively demonstrated, for purposes of summary judgment, that the investigation was requested for legitimate reasons.

In sum, there are triable issues of fact supporting the elements of Employee's discrimination cause of action. The trial court erred by concluding otherwise.

## C.     REMAINING CAUSES OF ACTION

The Department moved only for summary judgment (Code Civ. Proc., § 437c, subd. (a)(1) ["the action has no merit"]); it did not seek, in the alternative, summary adjudication (Code Civ. Proc., § 437c, subd. (f)(1) ["A party may move for summary adjudication as to one or more causes of action within an action"]). There are triable issues of fact on the first cause of action, which means the Department has failed to demonstrate that there is no merit to the case. Therefore, the motion for summary judgment fails. We need not address the remaining causes of action. (*Hawkins v. Wilton* (2006) 144 Cal.App.4th 936, 949 ["[B]ecause [defendant] did not move in the alternative for summary adjudication of specified issues, we will not address whether [defendant] may have prevailed on some issues in this case."].)

8

## DISPOSITION

The judgment is reversed.  The trial court is directed to vacate its order granting the motion for summary judgment and enter a new order denying the motion.  Appellant is awarded her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

McKINSTER

Acting P. J.

RAPHAEL

J.

9